## Thompson *v.* FitzGerald, Appellant.

*Equity—Pleading—Responsive answer—Matter by way of avoidance—Two witness rule.*

1. An answer to a bill in equity is not responsive so as to require the testimony of two witnesses, or of one witness and other corroborative circumstances, to avoid it, where the bill alleges the making of a written contract under seal "for divers good and valuable considerations" and charges a violation thereof by the defendant, and the answer admits the execution of the contract and the correctness of the copy, but avers that the defendant has wholly repudiated it and sets up unlawfulness of consideration. The latter averments are matters by way of justification and avoidance which the law requires he should prove.

*Evidence—Exemplification of record—Certification—Offer of proof.*

2. An exemplification of the record of proceedings in the courts of Great Britain, certified both by the court and the shorthand writer to be the proceedings at the trial and authenticated under the hand and seal of an American consul, is admissible in evidence over objection, without any certificate of a proper officer that "the foregoing is the entire record of the proceedings as the same appears before us of record."

3. An offer to prove in support of an objection to the admission of such records that they did not constitute the whole record of the case of which they were a part is properly overruled.

*Jurisdiction—Federal court—State court.*

4. Where a controversy is not wholly between citizens of different states, the state court commits no error in refusing a petition on the part of one of the litigants to transfer the proceedings to a federal court.

Argued May 9, 1911.    Appeal, No. 109, Jan. T., 1911, by defendant, from decree of C. P. Fayette Co., No. 618, in Equity, for plaintiff in case of Josiah V. Thompson, as Trustee for Lida Eleanor Purcell FitzGerald, John Purcell FitzGerald, Edward Maurice FitzGerald, and Gerald Purcell FitzGerald; Lida Eleanor Purcell FitzGerald, John Purcell FitzGerald, Edward Maurice FitzGerald and Gerald Purcell FitzGerald, infants, by William McClelland, their Guardian ad litem, v. Gerald Purcell

FitzGerald. Before FELL, C. J., BROWN, MESTREZAT, POTTER and MOSCHZISKER, JJ.   Affirmed.

Bill in equity to construe a trust under a written in-' strument for the removal and substitution of trustees, for an account, and other relief.

UMBEL, P. J., stated the facts as follows:

March 1, 1899, at the Cathedral of St. Vibiana, in the city of Los Angeles, in the state of California, U. S. A., Lida Eleanor Niccols, of Uniontown, Pa., was married to Gerald Purcell FitzGerald, a citizen of Ireland and a subject of the king of Great Britain, residing temporarily in the said United States.

· From this union was issue three children, viz.: John Purcell FitzGerald, born the latter part of 1899, and Edward Maurice FitzGerald, and Gerald Purcell FitzGerald, twins, born October 24, 1900.

During the first year of their married life domestic differences and difficulties of a more or less serious nature between them began to appear and continued growing more serious as time passed; Mr. FitzGerald accusing his wife of adultery and other matters, and Mrs. FitzGerald accusing her husband of adultery, cruelty and other grave misconduct. Matters progressed in such manner—bad becoming worse—until they separated in 1904, and some time thereafter Mrs. FitzGerald instituted, in the proper court of England, a proceeding for divorce; Mr. Fitz-Gerald challenged the jurisdiction of the English court upon the ground that he was a domiciled Irishman and it being a matrimonial matter the English court had no jurisdiction to entertain the claim, which contention was sustained by the English court and the proceeding dismissed.

On February 16, 1906, Mr. FitzGerald instituted a proceeding in his majesty's high court of justice in Ireland, king's bench division (matrimonial) against Mrs. FitzGerald for divorce on the ground of adultery, and on February 21, 1906, Mrs. FitzGerald instituted in the same

court a proceeding against Mr. FitzGerald for divorce on the ground of adultery, cruelty and other indignities.

These cases were prosecuted in such manner that they both came on for trial before the Right Honorable Lord O'BRIEN, Lord Chief Justice of Ireland, and a city special jury on December 5, 1906, when and where both parties were represented by quite an array of eminent counsel. When the jury were impaneled and before they were sworn, Mr. Sergeant Dodd, addressing the court, said:

"My Lord, in this case, in which a petition has been presented by Mr. FitzGerald I appear with my friends Mr. Healy and Mr. Rosenthal as counsel for the petitioner, and before you proceed to have the jury sworn, I desire to state that I have considered the matters submitted to me in support of the petition of Mr. FitzGerald. I have, I think, read every document and the details of the evidence which it was suggested might be given in proof, and I have arrived at the clear conclusion that it is my duty as leading counsel for Mr. FitzGerald, acting upon my own responsibility but with the full approval of my colleagues, Mr. Healy and Mr. Rosenthal and with the concurrence of my client to state that I have decided to offer no evidence in support of the petition. Of course that means that a decree may be given against Mr. FitzGerald in this suit."

Such an order was accordingly made dismissing the petition of Mr. FitzGerald with costs.

On the other case, that of Mrs. FitzGerald against her husband, the said Sergeant Dodd of counsel for the respondent in that case, addressing the court before the jury were sworn, said, inter alia, as follows, viz.:

"There are several allegations in this petition, which, if the entire case was fought out might give rise to bitter controversy as to the character and conduct of persons who are not before the court, and as to the personal honor of Mr. FitzGerald. If it is necessary that these matters should be proceeded with, it would be my duty to fight the case to the end. But even though the decision of the

jury and your lordship might be adverse to the petitioner as to these matters, I am of the opinion upon the instructions submitted to me, that there is enough left of the case of the petitioner to entitle her to the decree she claims.

"Mr. FitzGerald is not in a position to rebut some of the allegations of cruelty charged against him, and he admits that on the 17th of June, 1904, he was guilty of the offense charged, though not with the lady whose name has been erroneously mentioned in the petition. On these matters being proved or admitted—they are in fact admitted, for I am instructed to admit them—whatever the decision of the jury as to the other allegations in the petition might be, the lady would be entitled to succeed and to obtain the relief she claims in her petition. Under these circumstances it would be deplorable to have a bitter and acrimonious struggle in relation to matters not material to the issue, and if the counsel for Mrs. Fitz-Gerald are satisfied with our admissions on these issues I will not resist the case any further. I wish to say again that I adopt this course upon my own responsibility, but again I have the full approval of my colleagues, and the concurrence of my client and his solicitor."

In view of which Mr. Campbell, K. C., of counsel for Mrs. FitzGerald, addressing the court, said, inter alia:

"I feel myself placed, my lord, in a somewhat difficult position owing to the course that has been taken by my learned friend Sergeant Dodd. I think your lordship will give me credit for not being anxious to prolong ill will. I would be the last person in the world I hope to wish to enter into matters in this painful case that were unnecessary to enable my client to obtain the relief to which she is entitled."

Whereupon by reason of the novel situation counsel for Mrs. FitzGerald requested and the court granted a half hour's adjournment for conference and consideration; after which the jury was sworn and the case proceeded with in the regular orderly way; after the statement or

opening by counsel, witnesses were called, testimony and proofs submitted, clearly establishing the claims of the libelant on the question of adultery and cruelty on the part of Mr. FitzGerald, and after a fair, clear and impartial charge by the court to the jury, cautioning them particularly as to their duty on bona fides and mala fides in such cases.

"The jury retired and after an absence of about a quarter of an hour, returned into court, with a verdict that the husband had been guilty of cruelty and adultery. On these findings, his lordship pronounced a decree for divorce a mensa et thoro, with costs against the respondent."

The pleadings and proofs in this case in either England or this jurisdiction would have been sufficient to have entitled the libelant to a divorce a vinculo matrimonii, but no power to grant such divorce is vested in the courts of Ireland, and Irish subjects can be divorced absolutely only by special act of parliament.

The said Mr. and Mrs. FitzGerald executed an agreement under date of December 6, 1906, by the terms of which, inter alia, it was necessary to select and appoint trustee or trustees, and the trustees mutually selected by the said parties were the said Gerald Purcell Fitz-Gerald and Josiah V. Thompson and Charles E. Lenhart, the two latter being residents of Fayette county, Pa., and it was signed by all the said trustees as evidencing their willingness to accept and undertake the trust as per the terms of the said agreement.

It was admitted by all parties in interest that after the aforesaid decree in divorce a mensa et thoro Mrs. FitzGerald was entitled to a reasonable alimony, in keeping with the circumstances and financial ability of her husband, and she was likewise yet vested with her rights in dower of and in his extensive and valuable realty. While both parties seem to have been anxious to have an absolute divorce and the said agreement touches on that subject to the extent of fixing certain necessary dates, yet we are satisfied and find as a fact that the primary

and principal purposes were to settle and adjust the matter of permanent alimony and secure to Mr. FitzGerald a waiver of the said dower rights of his wife and make provisions for the maintenance and future comfort of their children, and the material provisions of the said agreement in these particulars and those relevant to this proceeding are, in substance, as follows, viz.:

1. He was to pay his wife alimony at the rate of £3,000 per annum from December 5, 1906, until the passage of the act of parliament dissolving the said marriage, in the meantime the wife to make no application to the court for alimony.

2. From the date of the act of parliament dissolving the said marriage the husband to pay to the trustees so much of his share of the profits accruing annually from the Fayette Coke Company and the Shamrock Supply Company as will yield an annuity of $15,000 per annum for three years and after three years so much as will yield an annuity of $20,000, to be collected from the said companies and paid to the wife by and through the trustees for and during the term of her natural life.

3. The husband also to pay to the trustees out of the balance of his nine-tenths share of the profits from the said two companies, from the passing of the said act of parliament, one-third of his said share to be invested by them until a total sum of $300,000 has accumulated; one-half of the income of this fund to be paid by the trustees to the wife and the other half is either to be allowed to accumulate or to be expended for the benefit of the children, in the discretion of the trustees.

4. "In consideration of the benefits to be obtained by the foregoing provisions in her favor the wife hereby agrees that in the event of the act of divorce becoming law that any right she may have to dower, alimony or otherwise under the laws of any of the United States of America or of Great Britain or Ireland shall be extinguished by and merged in this agreement, the execution whereof by her shall be deemed and taken to be a waiver by her

of all such rights to all intents and purposes as affecting the property of the husband."

5. The husband covenants and agrees with the trustees that he will not incumber nor alien nor suffer to be incumbered or aliened any portion of his interest in the said properties until the said fund of $300,000 has been accumulated.

6. In case of vacancy in the board of trustees the remaining two may fill it and in case they neglect or fail to do so it may on petition be filled by the court of common pleas of Fayette county, Pa.; the husband agrees not to challenge or controvert the fact that his wife enjoys the status of a citizen of the state of Pennsylvania, U. S. A.

7. The other provisions of the said agreement are regarding the custody, etc., of the children, disposition of the fund in case of death of parties or when children become of age, settlement of disputes as to meaning of provisions and other matters not material or relevant to the issues involved in this controversy.

Some time after the date of the above-mentioned agreement, a bill known as "The FitzGerald Divorce Act, 1907," was introduced into the British parliament "to dissolve the marriage of Lida Eleanor Purcell FitzGerald with Gerald Purcell FitzGerald, her present husband, and to enable her to marry again and for other purposes."

The record of the proceedings in the house of lords shows that there was submitted to parliament for its consideration, not only the decree in divorce a mensa et thoro and judgment of the high court of justice of Ireland hereinbefore mentioned, but also eminent counsel representing both the petitioner and the respondent, and agents representing both the parties, appeared and submitted substantially the same statements and proofs as were produced on the aforesaid trial in the said high court of Justice in Ireland; and the matter was so proceeded in that on July 26, 1907, it was, inter alia, enacted by the British parliament as follows, viz.:

"The bond of matrimony between the said Lida Eleanor Purcell FitzGerald and Gerald Purcell FitzGerald her husband being violated and broken by the manifest and open adultery of the said Gerald Purcell FitzGerald and by his cruelty to the said Lida Eleanor Purcell Fitz-Gerald shall be and the same is hereby from henceforth wholly dissolved annulled vacated and made void to all intents, constructions and purposes whatsoever."

It is further enacted that:

"It shall be lawful for the said Lida Eleanor Purcell FitzGerald at any time or times hereafter to contract matrimony and to marry as well in the lifetime of the said Gerald Purcell FitzGerald as after his decease with any man or men whom she might lawfully marry in case the said Gerald Purcell FitzGerald was actually dead."

Notwithstanding there is no such provision in the said enactment regarding the right of the said Gerald Purcell FitzGerald to remarry, yet it is a fact that five days after the date of the aforesaid enactment, viz.: July 31, 1907—he did remarry, and of that union one child has been born.

As to the aforesaid agreement, all the parties thereto in interest accepted and performed their respective parts and duties from the date thereof henceforth until June, 1910; pursuant to the provisions of said agreement the profits arising from the operation of the said two companies were, until the last-named date, distributed according to the terms of the said agreement, a proper proportion thereof having been regularly paid to said trustees for the benefit of said Lida Eleanor Purcell Fitz-Gerald and another portion (amounting in June, 1910, to over $34,000) paid to said trustees toward the accumulation of the $300,000 fund aforesaid.

June 23, 1910, the above-named trustees were advised and given notice in writing by the man in charge of the operation and management of said two companies and business manager of Mr. FitzGerald, as follows, viz.:

"You are hereby notified that G. P. FitzGerald has instructed me, as his business manager, not to pay to the Trustees, Alimony or to Children's Fund, amounts due June 30th, 1910."

Accordingly the said amounts were not paid, nor, so far as appears in this proceeding, have any other or further amounts since that date been paid to the said trustees nor to any other person for or on account of the said funds provided for in the said agreement. It being insisted that the said Mr. FitzGerald repudiated the said agreement and declared the same not binding on him, that he refused as one of the trustees to receive or pay over any part of the said trust funds and prevented further execution of said trusts.

In view of which facts and conditions this proceeding was instituted and a bill of complaint filed setting forth sufficient of the situation and of the foregoing facts to give this court, sitting in equity, jurisdiction; the prayer for relief is rather lengthy, consisting of seven paragraphs, but it can be condensed and the material substance of it expressed in one word, viz.: "performance."

So far as the important and material averments of the said bill are concerned, the answer of the defendant, Mr. FitzGerald, not only does not seriously question or deny them but in substance and effect, if not in direct language, practically admits their verity and for his defense avers that the said agreement is illegal, null, void and invalid as being collusive and against public policy, in view of the circumstances surrounding it and under which it was secured and executed, as set forth in his answer, as follows, viz.:

"On the 16th day of February, 1906, I then being a British subject domiciled in Ireland, did file in His Majesty's High Court of Justice in Ireland, King's Bench Division (Matrimonial) a petition praying said Court to decree a divorce a mensa et thoro from my then wife, the said plaintiff, Lida Eleanor Purcell · FitzGerald, wherein I did charge my said wife with adultery. On the

21st day of February, 1906, my said wife, Lida Eleanor
Purcell FitzGerald, did file in the said High Court of
Justice her petition against me, wherein she prayed for a
divorce a mensa et thoro, and in which petition she did
charge me with the offenses of adultery and cruelty.
The said causes were proceeded with and Bills of Particu-
lars were filed by each of us in our said suits under orders
of the said Court, setting forth the particulars of said
offenses so charged.    During the said litigation, to wit:
on or about the 3rd day of September, 1906, my said wife
and I did agree as follows:

"That I would withdraw my petition for divorce
against her, and that I would not contest her petition for
divorce, but would admit the said charges of adultery and
cruelty and facilitate her in procuring said divorce a mensa
et thoro in said Irish Court, and that upon procuring such
decree, as absolute divorces are not granted under Irish
law, she would proceed to apply for and secure an Act
of Parliament, declaring an absolute divorce from the
bonds of matrimony between her and me.    In compliance
with and in pursuance of said agreement, I did on the 5th
day of December, 1906, withdraw my said action for di-
vorce and the charges therein against my wife, and did
not contest my said wife's petition for divorce, and did
make the admissions heretofore referred to, in conse-
quence thereof, on the said 5th day of December, 1906,
my said wife obtained a decree of said Court divorcing
her a mensa et thoro.    On the succeeding day, to wit:
December 6, 1906, in further pursuance of said agreements
heretofore referred to, and in consideration of the said
acts on her part and my part heretofore referred to, the
contract or agreement set forth in plaintiff's Bill, and
which is the foundation of these proceedings, was entered
into between her and me, the further consideration for
said agreement on her part being, as set forth therein,
the procurement by my said wife of an Act of Parliament
divorcing her and me.    I particularly call the attention
of the Court to the second clause of said agreement, as

set forth in plaintiff's Bill, wherein the said consideration is set forth in the following language:

a. " '2. As and from the date of the passing of the Act of Parliament dissolving the marriage of the husband and wife, and in consideration of the premises, the husband will pay to the Trustees in trust, &c.'

"And I call the attention of the Court to the third paragraph of the said agreement, or contract, wherein the consideration for the same is again set forth in the following language:

b. " '3. For the consideration aforesaid the husband will also pay to the Trustees out of the balance of his nine-tenths (9/10's) share of the profits arising out of the two companies named above, to be paid to and collected by the Trustees from time to time, from the passing of the said Act of Parliament in manner as follows, to wit:'

"And I call the attention of the Court to clause 11 of the said contract or agreement, wherein it is provided as follows:

c. " '11. It is hereby agreed by and between the husband and the wife that the following provisions relating to their children shall take effect from the time of the passing of the said Act of Parliament, &c.' ' "

Upon these facts the trial court stated the following conclusions of law:

1. The answer of the defendant was not responsive to the bill so as to bring it within the rule requiring the plaintiff to overcome it by the testimony of at least two witnesses or one witness and corroborating circumstances and the burden was upon him to sustain its averments by competent proof.

2. The agreement of December 6, 1906, was not void, invalid and unenforceable as being collusive and against public policy.

3. The said agreement of December 6, 1906, being valid, created an equitable lien on the property of the defendant from the operation of which it is specifically provided the funds in question are to be derived.

4. The defendant having averred and insisting that the said agreement of December 6, 1906, is void and invalid and having repudiated the trust and refused to execute and perform his covenants therein contained, he should be removed as one of the trustees and his place be declared vacant.

The court entered this decree:

Now, March 3, 1911, this cause came on to be heard at this term and was argued by counsel; and now, March 15, 1911, thereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz.:

1. That the defendant, Gerald Purcell FitzGerald, forthwith pay to the trustees for the benefit of Lida Eleanor Purcell FitzGerald, the sum of $16,460, and that the said trustees pay the same to Lida Eleanor Purcell FitzGerald.

2. That the defendant, Gerald Purcell FitzGerald, forthwith pay to the trustees for the benefit of Lida Eleanor Purcell FitzGerald, John Purcell FitzGerald, Edward Maurice FitzGerald and Gerald Purcell Fitz-Gerald, minor children of the said defendant, Gerald Purcell FitzGerald, and of the said Lida Eleanor Purcell FitzGerald, the sum of $5,388, upon the trusts set forth in paragraph third of the agreement dated December 6, 1906, and set forth at large in the bill filed herein.

3. That the payments provided for in said agreement of December 6, 1906, be and the same are hereby adjudged to be a lien on all the right, title and interest of the defendant, Gerald Purcell FitzGerald, in and to the real property described in paragraph ninth of the bill filed herein and known as the Fayette Coke Company property.

4. That the defendant, Gerald Purcell FitzGerald, be and he is hereby removed from his office as trustee of the trusts created by said agreement of December 6, 1906, and he is hereby directed to account for and pay over to Josiah V. Thompson and Charles E. Lenhart, trustees of the trusts created by said agreement of December 6, 1906, and to the trustee to be hereafter chosen by them,

the said Thompson and Lenhart, or appointed by the court, in place of the said Gerald Purcell FitzGerald, all sums in his hand or for which he is accountable under said agreement of December 6, 1906.

5. That Richard W. Dawson, Esq., be and he is hereby appointed referee to take and state the account of the said defendant Gerald Purcell FitzGerald as trustee as aforesaid and report the same to the court, and upon final confirmation of said report that judgment be entered against the said Gerald Purcell FitzGerald for the amount found due on such accounting.

6. That Josiah V. Thompson and Charles E. Lenhart, trustees as aforesaid, are hereby directed to appoint some competent and judicious person as trustee in place of the said Gerald Purcell FitzGerald within ten days; in case they are unable to agree they shall report their disagreement to the court forthwith at the expiration of said period of ten days.

7. That the defendant, Gerald Purcell FitzGerald, be and he is hereby restrained and enjoined from in anywise alienating, incumbering or otherwise disposing of his interest in the property of the Fayette Coke Company and in the property of the Shamrock Supply Company unless and until there shall first have been accumulated in the hands of the trustees under the said agreement of December 6, 1906, the sum of $300,000 as provided by paragraph third of said agreement.

8. That the defendant, Gerald Purcell FitzGerald, pay the costs of this proceeding.

On the trial the following offers of proof were made:

Mr. Untermyer: I now offer in evidence, duly authenticated, under the hand and seal of the American consul for Great Britain, at Dublin, Ireland, the following documents: 1. The judgment of the high court of justice of Ireland, king's bench division, before the Honorable Lord Chief Justice, Lord O'Bryon, in the case of Lida Eleanor Purcell FitzGerald v. Gerald Purcell FitzGerald, on December 5, 1906.

2. A like authenticated record of the proceedings before the lord chief justice resulting in the verdict.

3. The pleadings in the action referred to, being the petition or bill of complaint, the answer and the bill of particulars, together with the notice of rejoinder of issue between the parties. The pleadings consisting of the petition of Mrs. FitzGerald, the answer of Gerald Purcell FitzGerald and the rejoinder of the petitioner in the suit against Mr. FitzGerald; also the petition of Gerald Purcell FitzGerald, the answer of Mrs. FitzGerald and the rejoinder by Mr. FitzGerald in the suit brought by him in the high court of justice in Ireland, being the suit referred to in the proceedings that have been offered, it appearing that both suits came to trial at or about the same time.

The petition or bill of complaint in the suit by Mrs. Fitz-Gerald against Mr. FitzGerald; the answer by Mr. Fitz-Gerald in the same suit; the bill of particulars in the same suit, marked; the rejoinder by Mrs. FitzGerald in the same suit, the notice of rejoinder of issue in the same suit; the petition in the suit brought by Mr. FitzGerald against Mrs. FitzGerald.

The answer by Mrs. FitzGerald in the same suit; rejoinder by Mr. FitzGerald in the same suit.

Judge GORDON: I do not know whether that is the complete record or not. Under the practice in this country a certification or exemplification of the record would be, under the certificate of the proper officer, that "the foregoing is the entire record of the proceedings as the same appears before us of record;" there is no such certificate here—each of these separate papers, one a transcript and certification of the pleadings, another a detached certification of the decree, being obviously not the exemplification of the record but the certificate of the clerk of court as what the decree, in effect contains; these things are offered in this detached and incomplete fashion and I object to them unless there is evidence that they are the complete record, and it must be presented in its

entirety or not at all.   I object to it because of its physical incompleteness and detachment, so that your honor is unable to say whether it is a complete record or not. This is a judicial proceeding in the high court of justice in Ireland—if anything is offered it must be all offered as the record and I object to this in its present form.

Mr. Untermyer: They are certified both by the court and the shorthand writer to be the proceedings at the trial, and you will find that the proceedings are certified in like manner and the decree is also certified in like manner.

The Court: We will allow them to be marked as exhibits and admitted, and will overrule the objection, with an exception for the defendants. [6]

Judge Gordon: I offer to prove in support of my objection to the admission of these records that they do not constitute the whole record of the case of which they are a part.

Mr. Untermyer: Will counsel specify in what respect the records are incomplete?

Judge Gordon: The record is not complete in that it does not show all the testimony taken upon the issue in the case; it does not show the testimony taken by the plaintiff on commission to the United States; it does not show the abandonment of the proceedings and the period when the petition of the parties as hostile litigants ceased, and the story and history of the litigation is not disclosed by this record.

Mr. Untermyer: Is it contended that any testimony taken on commission was offered as part of the proceeding at the trial of the action?   Is it contended by counsel upon the other side that the exhibit which has been offered as being a record of the proceedings at the trial is not a proper and correct record of what took place at the trial and the testimony that was there offered—is there such contention?

Judge Gordon: There is the contention that Mr. Untermyer has no authority to determine how much of the

record is relevant and how much is irrelevant.  Your honor must decide that.  The assurance of a member of the bar saying that he determines that he will leave out certain parts as being incompetent and irrelevant ——

Mr. Untermyer: Your honor, we object to this on the ground that the record appears to be, we believe it to be, and insist that it is, the complete record of the proceedings and of the decree and if it is not it lies with the other side to rebut the presumption raised by the certificate.

The Court: For the present the objection is sustained, with an exception for the respondent. [7]

*Errors assigned* among others were (1) in overruling defendant's motion at the conclusion of the plaintiffs' case to dismiss the bill; (6, 7) in rulings on evidence as quoted above; and (11) in refusing to transfer the case to the circuit court of the United States.

*James Gay Gordon, William A. Stone* and *Michael J. Ryan*, with them *H. L. Robinson*, for appellants.—The authorities in Pennsylvania all affirm the proposition that where a contract is sued upon, the denial of its existence in the form sued upon and the averment that it was different from that alleged in the bill and setting forth wherein the difference consisted and a denial that it was without consideration or that the consideration was different from that averred in the bill, is a responsive answer, and must be overcome by the plaintiff by the quantity of proof required in chancery: Seybert v. Robinson, 13 Pa. C. C. Rep. 198; Eberly v. Groff, 21 Pa. 251; Pusey v. Wright, 31 Pa. 387; Eaton's Appeal, 66 Pa. 483; Cresson's Appeal, 91 Pa. 168; Burke's Appeal, 99 Pa. 350; Rowley's Appeal, 115 Pa. 150; Gleghorne v. Gleghorne, 118 Pa. 383; Bell v. Nat. Bank, 131 Pa. 318; Hand v. Weidner, 151 Pa. 362; Fidelity Title & Trust Co. v. Weitzel, 152 Pa. 498.

The principle that a contract is void as against public policy when made between husband and wife for the pay-

ment of money founded in whole or in part upon the consideration that the marriage contract shall be annulled or disturbed or to facilitate a proceeding in divorce or not to contest such a proceeding or to admit the allegations therein, is of universal application in all the states of the union: Knight v. Press Co., 227 Pa. 185; Sampson v. Cresson, 6 Phila. 229; Kilborn v. Field, 78 Pa. 194; Loveren v. Loveren, 106 California, 509 (39 Pac. Repr. 801); Hamilton v. Hamilton, 89 Illinois, 349; Wilde v. Wilde, 37 Nebraska, 891 (56 N. W. Repr. 724); Cross v. Cross, 58 N. H. 373.

Where an exemplification of a record is offered in evidence, it must contain the whole record: Ingham v. Crary, 1 Penrose & Watts, 389; Susquehanna & Wyoming Valley Railroad & Coal Co. v. Quick, 68 Pa. 189; Hampton v. Speckenagle, 9 S. & R. 212.

*Samuel Untermyer*, of *Guggenheimer, Untermyer & Marshall*, with him *William J. Sturgis*, of *Reppert, Sturgis & Morrow*, for appellee.—Illegality not appearing upon the face of the bill is a matter of affirmative defense and must be pleaded and proved as such by the defendant. This rule proceeds directly from the strong presumption of legality which attached to the agreement of parties and is particularly applicable to cases where those agreements have been reduced to writing and have been executed under seal: Cæsar v. Capell, 83 Fed. Repr. 403; Paige v. Hieronymus, 192 Ill. 546 (61 N. E. Repr. 832); Shaw v. Waterhouse, 79 Me. 180 (8 Atl. Repr. 829); Trott v. Irish, 83 Mass. 481; Doolittle v. Lyman, 44 N. H. 608; Fivey v. Penna. R. R. Co., 67 N. J. Law, 627 (52 Atl. Repr. 472); Harris v. White, 81 N. Y. 532; Milbank v. Jones, 127 N. Y. 370 (28 N. E. Repr. 31); Sissons v. Dixon, 5 Barn. & Cress. 758; Daniels v. Benedict, 97 Fed. Repr. 367; Pusey v. Wright, 31 Pa. 387; Bonsall v. Kirkpatrick, 20 Pitts. Leg. J. (O. S.) 146; Kenney's Appeal (Pa.), 12 Atl. Repr. 589; Thomas v. Loose, 114 Pa. 35 (6 Atl. Repr. 326); Cullmans v. Lindsay, 114 Pa. 166

(6 Atl. Repr. 332); Juniata Building & Loan Assn. v. Hetzel, 103 Pa. 507; Sargent v. Larned, 21 Fed. Cas. 501 Case No. 12,364; Yard v. Patton, 13 Pa. 278.

PER CURIAM, October 19, 1911:

A majority of this court agree with the court below that the answer of the defendant was not responsive to the bill, and that, under the facts found, no one of which has been assigned as error, the conclusions reached by the learned chancellor were correct. The offer of evidence complained of by the sixth assignment was properly allowed, and the rejection complained of by the seventh was proper. As this is not a controversy wholly between citizens of different states, the petition of the appellant for a transfer of the proceeding to the circuit court of the United States for the western district of Pennsylvania could not have been allowed.

Decree affirmed at appellant's costs.