## Thompson, Trustee, et al. *v.* FitzGerald et al., Appellants.

Argued September 30, 1941. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Charles H. Sachs,* of *Sachs & Caplan,* with him *Chas L. John,* for appellants.

*C. F. C. Arensberg* and *Dean D. Sturgis,* with them *W. Brown Higbee,* for appellees.

*George W. Cornell,* with him *Sidney J. Watts,* of *Baker & Watts,* for appellee.

OPINION BY MR. JUSTICE LINN, November 24, 1941:
These appeals are from the adjudication of several accounts of trustees acting under agreements providing support for a wife and three children. Separation proceedings instituted by FitzGerald and his wife, now

the Princess Lida, culminating in an absolute divorce, resulted in two trust agreements: the first, made in 1906, providing for the accumulation of a sum exceeding $300,000, designated as the Children's Trust Fund; the second, made in 1915, providing for a fund exceeding $400,000, referred to as the Alimony Trust Fund. Details of these agreements, which need not now be repeated, appear in *Thompson v. FitzGerald,* 329 Pa. 497, 198 A. 58.[1]

At the audits,[2] a number of questions were raised. Surcharges were asked for on the ground of unauthorized investment, negligent retention of nonlegal securities, and, in other respects, negligent administration. These questions were well considered by the learned chancellor, CARR, J.; on exceptions to the adjudication they were again considered and disposed of by a court in banc composed of the chancellor, sitting with TRIMBLE, P. J., and MITCHELL, J., of the Fifth Judicial District. We have thoroughly examined the record in the light of the arguments presented, and must overrule the assignments of error complaining that additional surcharges were not made; none merits separate discussion. No appeals were taken by the parties surcharged.

Appellants' contention on another point must be referred to. The Alimony Trust Fund, the origin of which is stated in 329 Pa. at p. 501, was "to be invested by the trustees and the net income, together with the interest on the mortgage, was to be applied to the payment of the wife's annuity, and upon her death the $400,000, or such part thereof as had then accumulated, was to be returned[3] to FitzGerald and the mortgage satisfied."

---

[1] Affirmed: 305 U. S. 456. See also *Thompson v. FitzGerald,* 233 Pa. 242, 82 A. 212.

[2] The audit was delayed by the litigation reported in 329 Pa. 497, 198 A. 58.

[3] The provision in the agreement is: "On the death of the Wife, to return the residue of said fund and its surplus accumulations, if any, to the said Gerald Purcell FitzGerald, his heirs, executors, administrators or assigns."

On June 11, 1928, FitzGerald assigned to the Second National Bank of Uniontown, Pennsylvania, as trustee, "All that certain trust fund of Four Hundred Thousand (400,000) Dollars" created on March 5, 1915, "together with the present and future accumulations or accretions thereof, as they may be and exist at the date of the death of Lida . . . to take effect immediately from and after the death of the said Lida, IN TRUST . . ." (1) to pay the income to himself for life; (2) upon his death or that of Lida if she survived him, to hold equal fourths of the fund in trust, three for the benefit of John, Gerald and Edward, sons of Lida, upon similar terms, which need not now be stated. These trusts were designated Trust No. 1, Trust No. 2 and Trust No. 3.

Trust No. 4 was for the benefit of Mary Augusta, a daughter by his second marriage; the assignment declared her interest to be subject to divestiture if Fitz-Gerald should devise his Irish estate, Island Waterford, to his son Nicholas. The assignment provided: "the purpose of this fund (Trust No. 4), is to better enable the devisee of that estate to maintain it". If "Mary, or Nicholas, as the case may be" should die without leaving surviving descendants, he provided that Trust No. 4 should be divided among Trusts Nos. 1, 2 and 3. The interests of the beneficiaries were declared nonassignable and free from attachment.

This was a presently effective assignment, not an agreement to assign in the future. The question raised by appellants results from the efforts in 1939 by Fitz-Gerald, Lida and her children to change the property arrangements theretofore established by the three contracts of 1906, 1915 and 1928. On March 20, 1939, Fitz-Gerald and his former wife and their three sons, agreed in writing to modify the agreement of 1906, which had created the Children's Trust Fund, by providing that thereafter vacancies in the trusteeships "shall be supplied by the appointment made by the wife, Lida . . . alone, during her lifetime; and if she is not living at the

time such vacancy arises, such appointment shall be made by her surviving children, she or they, under the circumstances hereinbefore provided, to have the right either to appoint such Trustee, or, in her or their discretion, to petition the Court of Common Pleas, of Fayette County, Pennsylvania, United States of America, or in any other Court, to fill such vacancy or vacancies. SECOND: It is also agreed that Clause 9 of the aforesaid Agreement and Trust is hereby altered, modified and amended, as follows: (9) In case of disputes by any party interested, as to the meaning of the foregoing provisions, such disputes shall be settled and determined in conjunction with the aforesaid wife, Princess Lida of Thurn and Taxis, but if she is not living when such disputes arise, then they shall be so settled and determined in conjunction with her surviving children; and the said wife during her lifetime, or her surviving children in the event of her death, shall have the right, if such disputes cannot be settled and determined to her or their satisfaction, to appeal to the aforesaid Court of Common Pleas or any other Court."

Less than four months after that attempted change, the same parties, on July 7, 1939, made another change in both the agreements of 1906 and 1915 by providing: "The Trustees for the Alimony Trust Fund and the Children's Trust Fund shall be two in number. Any one or all of the present or future Trustees therefor may be removed, by written notice effective ten (10) days after delivery thereof to such Trustees, during which ten day period no investment shall be made by such Trustees, such notice to be signed by Princess Lida of Thurn and Taxis alone, during her lifetime, who shall also have the sole power to appoint a successor trustee or trustees, from time to time, whenever a vacancy shall occur, by removal or otherwise." "Second: It is also agreed that during the lifetime of the Princess Lida of Thurn and Taxis the Trustees may in their discretion with the written consent of her as to the Alimony Trust Fund and

with the written consent of her and her children as to the Children's Trust Fund invest from time to time any or the whole of said funds in Grade 'A' securities, safe income producing securities, which are not[4] at the time of such investment legal investment for trust funds under the laws of the Commonwealth of Pennsylvania and may hold any or all of such investments so made for such period of time as in the judgment of the trustees and the said Princess Lida of Thurn and Taxis and her children shall be for the best interest of the Alimony Trust Fund and the Children's Trust Fund." Thereafter, Princess Lida gave notice of removals and appointments by her.

FitzGerald's daughter by his second marriage, Mary Augusta, was named in the assignment of 1928 as a beneficiary. The learned chancellor held that she and her descendants had interests in the Alimony Trust Fund antedating the amending agreements of 1939, which could not be altered without their consent. He said: "These remaindermen, some of whom are as yet unascertained, were not parties to either indenture, and since the settlor had not reserved power to modify the trust and the purported amendments were not consented to by all the beneficiaries, the amendments can have no force or effect as to the alimony fund: Restatement, Trusts, Sections 330, 331, 337, 340; *King v. York Trust Co.,* 278 Pa. 141; *Johnson v. Provident Trust Co.,* 280 Pa. 255; *Gill's Estate,* 293 Pa. 199. The result is that Arnett and Higbee remain as trustees of the alimony fund, despite the notice of their dismissal given them by the Princess Lida. However, as they have consented to their dismissal, I shall, under the circumstances, give effect to their willingness to retire, and regard their relation to the entire trust terminated at the date of the final approval of their accounts. This will necessitate the appointment of new trustees in their stead, which appoint-

---

[4] The agreement of 1915 provided for investment "in good, safe, interest bearing, lawful and secure trust securities".

ments will be made on proper application. I will wish, of course, to be fully assured of the qualifications of those who may be nominated by the parties in interest, . . . ."

In support of their position that non-assenting beneficiaries of the assignment of 1928 should be bound by the changes made in 1939, appellants contend that the agreement of 1915 was a mere "security device" to assure payment of alimony "not controlled by the rules governing ordinary trusts" and, accordingly, that FitzGerald, his former wife and their children, as the only parties interested prior to 1928, had power to change the terms of the alimony trust in 1939 without the consent of the parties deriving their interest from the assignment of 1928. We can find no basis for the contention. As the Alimony Fund under the agreement of 1915 was a security created by FitzGerald to assure performance of the agreement of 1906, his interest, as the debtor, was to receive back the unused portion of the fund at the death of Lida. This was a property right which he could assign subject to the prior rights of others in the fund, and this he did by making and delivering the assignment to the assignee on the trusts declared. At that time Princess Lida had no right to remove trustees of the Alimony Trust Fund nor to fill vacancies and the trustees were not expressly authorized to make nonlegal investments. The settlor, FitzGerald, had reserved no power to revoke or amend the trust. The exercise, by the Princess, of these powers, which were not in existence in 1928, might have a disastrous effect on the beneficiaries of the assignment of 1928. The practical effect, on the Alimony Trust Fund, of the changes made in the 1939 agreements would be to give her quite the same control over the trust property as she would have had if the trusts had been terminated and the funds administered as her own by her agents. While her former husband in 1939 could bind his own interests under the assignment of 1928, other beneficiaries under that assignment are entitled to the protection of the court.

We have also considered the contentions respecting the claims for compensation for trustees and counsel and find no reason to differ from the conclusions reached below.

Decrees affirmed at the costs of appellants.