Catherine S. CULBERTSON, as guardian and conservator for, Carly Culbertson Plaintiff,

v.

PEOPLES BANK and MEDI-BILL, INC., Defendants.

No. 4:05–CV–67.

United States District Court,
S.D. Iowa,
Central Division.

July 1, 2005.

Scott M Brennan, Davis Brown Koehn Shors & Roberts, Des Moines, IA, Jodie Lynn Clark, Dais Brown Koehn Shores & Roberts PC, Des Moines, IA, for Catherine S. Culbertson as guardian and conservator for, Carly Culbertson, Plaintiff.

Terri L Combs, Faegre & Benson, Des Moines, IA, Russell O. Stewart, Faegre & Benson, Denver, CO, for Medi–Bill, Inc.

Kimberly Marie Colonna, James P DeAngelo, Harrisburg, PA, Robert L Fanter, Whitfield & Eddy, PLC, Des Moines, IA, Kevin M Reynolds, Whitfield & Eddy, PLC, Des Moines, IA, for Peoples Bank.

Cathy Jo Burdette, U.S. Dept of Justice, Washington, DC, Christopher D Hagen, U S Attorney's Office, Des Moines, IA, for United States Department of Health and Human Services.

## MEMORANDUM OPINION AND ORDER

PRATT, District Judge.

Before the Court are two Motions to Dismiss (Clerk's Nos. 21 & 30). Defendant Medi–Bill, Inc. ("Medi–Bill") filed its Motion to Dismiss (Clerk's No. 21) on April 11, 2005. Defendant Peoples Bank filed its Motion to Dismiss (Clerk's No. 30) on May 27, 2005. Medi–Bill joined Peoples Bank's Motion on June 15, 2005 (Clerk's No. 35).[1] The present conflict stems from a judgment awarded by the

---

1. The present complaint originally included, as a Defendant, Michael O. Leavitt, Secretary of the Department of Health and Human Services ("DHHS"). The DHHS filed a Motion to Dismiss (Clerk's No. 29) on May 27, 2005. Plaintiff removed DHHS as a Defendant on June 13, 2005 (Clerk's No. 31), rendering the DHHS Motion to Dismiss moot. Medi–Bill and Peoples Banks' attempted joinder in DHHS' Motion (Clerk's Nos. 35 & 36) came after DHHS was removed as a Defendant, and therefore, DHHS' Motion is no longer before this Court.

United States Court of Federal Claims, pursuant to the National Childhood Vaccine Injury Act ("NCVIA") and the resulting Irrevocable Reversionary Trust, for the benefit of Carly Culbertson ("Trust"). *See* 42 U.S.C. § 300aa–1 et seq.; Pl.'s. Ex. A. Plaintiff argues that certain terms of the Trust are ambiguous and that it is not being administered properly by the Defendants. Both Medi–Bill and Peoples Bank argue that the Complaint must be dismissed because jurisdiction over this claim exists only in the Court of Federal Claims. Both motions have been fully briefed and oral argument regarding Med–Bill's Motion to Dismiss was held on June 21, 2005. The matters are fully submitted.

## I. BACKGROUND

Plaintiff Catherine Culbertson is the guardian and conservator for her daughter, Carly Culbertson. Carly Culbertson was immunized for DTP on or about May 1, 1981. Thereafter, she began to display symptoms of a seizure disorder and of mental retardation. Plaintiff filed a petition for vaccine compensation against the DHHS, pursuant to the NCVIA in the United States Court of Federal Claims, Office of Special Masters.[2] As a result of the litigation, Culbertson and the DHHS entered into a stipulation signed and dated July 9, 1996. On July 25, 1996, the United States Court of Federal Claims issued the following judgment:

> Pursuant to the stipulation, filed July 9, 1996, and the special master's decision of July 9, 1996, it was held that petitioners are entitled to an award.

IT IS ORDERED AND ADJUDGED this date, pursuant to Vaccine Rule 11(a), that petitioners are awarded compensation in a lump sum of $34,312.00 payable to petitioner; a lump sum of $75,097.00 payable to Peoples Bank of Glen Rock, Trustee, IRREVOCABLE REVERSIONARY TRUST FOR Carly Culbertson; a lump sum of $30,000.00 payable to petitioners and petitioners' attorney, Boyd McDowell III, for attorney's fees and costs; and an amount sufficient to purchase the annuity contract described in paragraphs 12 and 13 of the above referred stipulation and special master's decision.

Pl.'s Ex. A at 12. Thereafter, the DHHS paid the $34,312 payment and the $30,000 payment to Culbertson. On August 23, 1996, the following parties entered into the Trust Agreement at issue: 1) The United States of America, Grantor; 2) Peoples Bank of Glen Rock, Trustee; 3) Catherine Culbertson, Guardian; and 4) Medi–Bill, Inc., Medical Administrator. DHHS transferred to Peoples Bank, "a one-time cash payment in the amount of $75,097," and DHHS purchased the annuity contract, as ordered by the Court of Federal Claims.

It is clear that the Trust was created "for the benefit of Carly Culbertson." It is also clear that the United States has a reversionary interest in the "income on the Trust Estate earned but not disbursed." Pl.'s Ex. A at 1 & 4. The Trust has been administered for over eight years, but this dispute arose after year seven due to cer-

**2.** "The National Childhood Vaccine Injury Act represents an effort to provide compensation to those harmed by childhood vaccines outside the framework of traditional tort law .... The Vaccine Act responds to these complaints by creating a remedial system that tries more quickly to deliver compensation to victims, while also reducing insurance and litigation costs for manufacturers. The Act establishes a special claims procedure involving the Court of Federal Claims and special masters .... 42 U.S.C. § 300aa–12. A person injured by a vaccine may file a petition with the Vaccine Court to obtain compensation (from a fund financed by a tax on vaccines). *Id.* § 300aa–11." *Schafer v. American Cyanamid Co.,* 20 F.3d 1, 2–3 (1st Cir. 1994).

tain terms of the Trust, which did not take effect until the eighth year. The Trust, a discretionary trust, provides that the Trustee, Peoples Bank, has discretion over the amount of distributions made to the beneficiary, Carly Culbertson. Anticipating that disputes may arise regarding disbursements the Trust provides:

> If the TRUSTEE is in doubt concerning whether a distribution requested by the GUARDIAN is within the scope or purpose of this TRUST, the TRUSTEE may consult with the MEDICAL ADMINISTRATOR, who shall assist the TRUSTEE in making its decision. If, after consultation with the MEDICAL ADMINISTRATOR, the TRUSTEE disagrees with the GUARDIAN regarding whether the requested distribution is within the scope or purpose of this TRUST, the TRUSTEE may refrain from taking any action in connection with the disputed request until the matter has been resolved. The parties to any such dispute shall attempt to resolve their dispute by communication and discussion. If the parties to the dispute are unable to resolve their differences, after discussion, then any such party may invoke the jurisdiction of *any court of competent jurisdiction* to resolve the dispute.

*Id.* at 3. (emphasis added). The Trust also provides that disputes over Trust terms "shall be governed by and construed and enforced in accordance with the applicable trust, banking and contract laws of the Commonwealth of Pennsylvania." *Id.* at 8.

Plaintiff's Complaint indicates that "this action is not one asking the court to review a finding of fact or conclusion of law made by the United States Court of Federal Claims." Compl. at 5. Rather, Plaintiff argues that it is an action to resolve "certain ambiguous provisions in the Trust ...." *Id.* The determinative questions before the Court are: 1) whether the Court of Federal Claims has exclusive jurisdic-

tion over any claim that refers to the NCVIA; 2) whether the Trust is part of, or separate from, the Final Judgment of the Court of Federal Claims; and 3) whether the United States, which was removed as a Defendant on June 13, 2005, is an indispensable party to the present action.

## II. ANALYSIS

### A. The United States Court of Federal Claims

■ Defendants argue that this Court may not entertain Plaintiff's Complaint because exclusive jurisdiction lies in the United States Court of Federal Claims. The NCVIA itself lays out which courts have jurisdiction over claims for compensation under the Act. The statute reads:

> The United States Claims Court [United States Court of Federal Claims] and the United States Claims Court [United States Court of Federal Claims] special masters shall, in accordance with this section, have jurisdiction over proceedings to determine if a petitioner under section 2111 [42 USCS § 300aa–11] is entitled to compensation under the Program and the amount of such compensation. The United States Claims Court [United States Court of Federal Claims] may issue and enforce such orders as the court deems necessary to assure the prompt payment of any compensation awarded.

42 U.S.C. § 300aa–12. All the parties agree that the Court of Federal Claims has exclusive jurisdiction over petitions for compensation under § 300aa–11, and that the Court of Federal Claims is specially designed to determine the questions of entitlement under the Act and the amount of compensation to be awarded. The present dispute is whether the administration of the Reversionary Trust Agreement, which was drafted as a result of the Court of Federal Claims judgment, is also cov-

ered by the exclusivity provision of § 300aa–12.

The Court now turns to the second sentence of § 300aa–12, which states: "The Court of Claims may issue and enforce such orders as the court deems necessary to assure the prompt payment of any compensation awarded." The use of the permissive term "may," in contrast to the use of the term "shall" in the previous sentence, indicates that the exclusivity provision extends only to the questions of entitlement and initial amounts of compensation. Questions of entitlement and the initial amount of compensation, however, are not presently before the Court. Rather, the question before the Court regards the subsequent disbursement of the compensation awarded. Accordingly, Plaintiff's Complaint does not fall under the exclusivity provision of the NCVIA.

### B. *Ancillary Jurisdiction*

■ Defendants next argue that the Court of Federal Claims has ancillary jurisdiction over this Complaint because the Trust is "part and parcel" of the order that it issued on July 25, 1996. Plaintiff, in contrast, argues that the Trust Agreement is a separate entity from the judgment, which has its own basis for jurisdiction in this Court. The Supreme Court decision in *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), sheds light on this dispute. *Kokkonen* decided whether a district court retained jurisdiction over a settlement agreement, which grew out of a district court order dismissing the case. The following facts occurred in that case:

> After closing arguments but before the District Judge instructed the jury, the parties arrived at an oral agreement settling all claims and counterclaims, the substance of which they recited, on the record, before the District Judge in chambers. In April 1992, pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), the parties executed a Stipulation and Order of Dismissal with Prejudice, dismissing the complaint and cross-complaint. On April 13, the District Judge signed the Stipulation and Order under the notation "It is so ordered." The Stipulation and Order did not reserve jurisdiction in the District Court to enforce the settlement agreement; indeed it did not so much as refer to the settlement agreement.

*Kokkonen*, 511 U.S. at 376–77, 114 S.Ct. 1673. The Supreme Court held that the settlement agreement was not part of the district court order and, therefore, the district court did not possess ancillary jurisdiction over enforcement of the settlement agreement. Justice Scalia, writing for a unanimous Court, stated: "Enforcement of the settlement agreement . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Id.* at 378, 114 S.Ct. 1673. In its resolution of the dispute, the Supreme Court discussed the two situations where ancillary jurisdiction is proper: "1) to permit disposition by a single court of claims that are in varying respects and degrees, factually interdependent, and 2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80, 114 S.Ct. 1673 (internal and external citations omitted).

The facts that were relevant to Carly Culbertson's original compensation claim under 300aa–11 are not relevant to the trust administration claims presently before the Court. Similarly, in *Kokkonen*, the underlying claim dealt with an agency agreement whereas the resultant claim surrounded terms of a settlement agreement—the parties were the same, but the relevant facts were not. Likewise here, the facts relevant to the Trust dispute, i.e., the terms of the Trust, are independent of

the facts that were before the special master, i.e., causation. In such a situation, "[i]t would be neither necessary nor even particularly efficient that they be adjudicated together." *Id.* at 380, 114 S.Ct. 1673. The Trust was created after the entry of judgment by the Court of Federal Claims and its interpretation comes from the document itself. The Court of Federal Claims was not a party to the Trust, nor did it reserve exclusive jurisdiction over the terms of the Trust.

■■■■ The second purpose of ancillary jurisdiction stems from "the court's power to protect its proceedings and vindicate its authority." *Id.* In essence, this permits a court to exercise ancillary jurisdiction to discern whether the parties are following the direct mandates of the issuing court. If a breach of the settlement agreement or, in this case, the Trust Agreement also is a violation of the original court's order, ancillary jurisdiction does exist. *See id.* ("In that event a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist."). To exert ancillary jurisdiction, however, it is not enough that the original court was merely aware of or approved of the terms of the settlement agreement. *See id.* at 381, 114 S.Ct. 1673 ("The judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order."). Something more must be present to make the separate agreement part of the judgment. For instance, the judge must have entered a provision retaining jurisdiction over the separate document, or have incorporated the agreement into the order. *Id.* Neither situation is present here. The Judgment from the Court of Federal Claims reads:

Pursuant to the stipulation, filed July 9, 1996, and the special master's decision of July 9, 1996, it was held that the petitioners are entitled to an award.

IT IS ORDERED AND ADJUDGED this date, pursuant to Vaccine Rule 11(a), that petitioners are awarded compensation in a lump sum of $34,312.00 payable to petitioner; a lump sum of $75,097.00 payable to the Peoples Bank of Glen Rock, Trustee, IRREVOCABLE REVERSIONARY TRUST FOR Carly Culbertson; a lump sum of $30,000.00 payable to petitioners and petitioners' attorney, Boyd McDowell III, for attorney fees and costs; and an amount sufficient to purchase the annuity contract described in paragraphs 12 and 13 of the above referred stipulation and the special master's decision.

Pl.'s Ex. A at 12. Plaintiff's Complaint does not allege that any of these orders were not followed. Indeed, all of the payments were made and the Trust was created. Rather, Plaintiff is alleging a separate cause of action under the IRREVOCABLE REVERSIONARY TRUST, which was signed by Medi–Bill, United States, Culbertson, and Peoples Bank, after the Judgment of the Court of Federal Claims. A breach of the Trust is not a violation of the Claims Court's order, and the Trust requires its own separate basis of jurisdiction. The Trust provides that disputes may be brought in "*any* court of competent jurisdiction." Pl.'s Ex. A at 3. (emphasis added). Plaintiff's claims are rooted in state law, but as the parties are diverse and there is more than $75,000 in controversy, diversity jurisdiction over her claim is proper in this Court. *See* 28 U.S.C. § 1332.

### C. *Indispensable Party*

■■■■ In its Reply Brief, Peoples Bank argues that the case must be dismissed because the United States is an indispensable party to the litigation. "Under Federal Rule of Civil Procedure 19 a nonparty is indispensable to an action if (1) the nonparty is necessary; (2) the nonparty

cannot be joined; and (3) the action cannot continue in equity and good conscience without the nonparty." *United States v. Turn Key Gaming, Inc.*, 135 F.3d 1249, 1251 (8th Cir.1998) (citing *Pembina Treaty Comm. v. Lujan*, 980 F.2d 543, 544–45 (8th Cir.1992)). It does not appear in this case that the United States is even a necessary party, but even assuming that the United States is necessary and cannot be joined in this action, the United States is not indispensable such that the Complaint must be dismissed. Factors relevant to the Court's resolution of this issue are laid out in Federal Rule of Civil Procedure 19(b) entitled, "Determination by Court Whenever Joinder Not Feasible":

> The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b). Relevant to the issue on the present facts is whether a judgment in the United States' absence would be prejudicial to the United States, due to its reversionary interest in the Carly Culbertson Trust. A look to basic trust principles and the Trust itself highlights that the United States is not an indispensable party.

The United States' role in the trust is that of Grantor, which is also often referred to in trust law as the "settlor." Since the Trust at issue is an irrevocable trust, the United States retained no power to alter the terms of the trust. "If the declaration of trust shows an intent to create an irrevocable trust, then the settlor, generally speaking, has no power to alter the terms of the trust." *See In re Harader Trust*, 303 Pa.Super. 10, 449 A.2d 52, 53 (1982) (citing *Thompson, Trustee v. Fitzgerald*, 344 Pa. 90, 22 A.2d 658 (1941), *Dickerson's Appeal*, 115 Pa. 198, 8 A. 64 (1887), 38 P.L.E. Trusts § 52, Bogert, Trusts and Trustees (2d ed.) § 333.4). Instead the United States' intent is determined by the words of the Trust itself. *See* Restatement (Second) Trusts § 164 cmt. b ("The intention of the settlor which determines the terms of the trust is his intention at the time of the creation of the trust and not his subsequent intention."). It is the duty of the Trustee, here Peoples Bank, to uphold the integrity of the Trust and the trustee cannot be influenced by later given instructions by the settlor. *See* Restatement (Second) Trusts § 164 cmt. b ("The duties or powers of the trustee cannot be enlarged or diminished by a direction of the settlor given subsequent to the creation of the trust, except to the extent to which the settlor has reserved power to revoke or modify the trust or to control its administration."). Since the United States did not retain any power over the trustee's discretionary disbursements, the United States is not necessary to resolution of this suit.

It is important to note that Plaintiff is not asking this Court to modify any terms of the Trust. Were this Plaintiff's request, the case would be entirely different. Here, however, the trustee is the defender of the trust and, as no party has the power to revoke or modify the trust, Peoples Bank can adequately defend the integrity of the document [3] It is true that the United

---

**3.** In its Reply Brief, Peoples Bank states that it has "no interest in the funds in the Trust, other than a small administrative fee that it receives for administering the trust." The Court notes, however, that Peoples Bank ad-

States has a reversionary interest, but by the terms of the trust, it is only entitled to funds in excess of what is necessary for the care of Carly Culbertson. The purpose of the trust is not to preserve reversionary funds for the United States. All the Plaintiff is asking of this Court is that the trustee follow the mandate of the trust language, which incorporates provisions of the stipulation. There is simply nothing Defendants have presented to the Court that would indicate that the United States is an indispensable party.

█ Further, the United States' reversionary interest in the Trust Estate does not make this case "in actuality" a case against the United States. "A suit is against the sovereign if 'the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Dugan v. Rank*, 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963) (quoting *Land v. Dollar*, 330 U.S. 731, 738, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947) and *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949)). None of the listed situations are present here. Any compensation that Plaintiff may receive is drawn from the Trust itself, which was funded by money the United States was obliged to create based on an earlier judgment. Any possible recovery, therefore, comes from an independent source, which does not affect the public treasury. This is in distinct contrast to two cases cited by Peoples Bank in support of its argument, both where the funds at issue were being drawn from the federal treasury. *See Bushman*

*v. Seiler*, 755 F.2d 653 (8th Cir.1985) (medicare payments from the federal treasury); *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386 (9th Cir.2000) (payments drawn from a federal insurance policy). Here, the government's reversionary interest is only what is leftover after the primary purpose of the Trust is fulfilled— namely the care of Carly Culbertson. Accordingly, the government is not entitled to any excess funds it may receive due to improper trust administration. In the present situation, Plaintiff is not asking for money from the government, nor compelling the government to act. Rather, Plaintiff merely seeks resolution of a simple question regarding trust construction and administration. The government's reversionary interest in excess funds is secondary to ensuring the proper administration of the trust.

## III. CONCLUSION

█ The Complaint currently before the Court is not a claim for compensation under the NCVIA, nor is it a request to modify or enforce any terms of the Court of Federal Claims judgment. Instead, this is an action based on a Trust Agreement, which was recognized by the Court of Federal Claims, but which was not "part and parcel" of its judgment. As such, the Complaint falls outside of the exclusivity provision of § 300aa–12, and the Trust provides its own basis for jurisdiction. Plaintiff's claim satisfies all the requirements necessary for the existence of diversity jurisdiction in this Court. Further, there is nothing before the Court to indicate that the United States is an indispensable party to this action. Therefore, dismissal under Federal Rule of Civil Pro-

---

ministrative fee is the greater of "$750 per year" or "1.0% per year of the fair market value of the Trust Estate." This appears to suggest that Peoples Bank has an interest in exercising its discretion to not make payment

to Carly Culbertson, for its personal gain. From the Court's perspective, this appears to risk a conflict of interest and undermine the fiduciary responsibilities inherent in the trustee-beneficiary relationship.

cedure 12(b)(7) is not warranted. Finally, as there is a basis of jurisdiction in this Court, Peoples Bank's Alternative Motion to Transfer to the United States Court of Claims pursuant to 28 U.S.C. § 1631 is denied.[4] For the reasons stated herein, Defendants' Motions to Dismiss (Clerk's Nos. 21 & 30) are DENIED. Additionally, as the United States is no longer a party to the present action, its Motion to Dismiss (Clerk's No. 29) is DENIED as moot.

IT IS SO ORDERED.

---

4.  28 U.S.C. § 1631 provides for transfer only when "that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ...."