Thompson, Trustee, et al., Appellants, *v.*
FitzGerald et al.

Argued, January 11, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Walter P. Smart,* with him *R. Murray Gibson, Jr.,* for appellants.

*Dean D. Sturgis,* of *Morrow & Sturgis,* with him *E. C. Higbee,* of *Higbee, Matthews & Lewellyn,* for appellees.

OPINION BY MR. JUSTICE STERN, March 21, 1938:

In 1899 Lida Eleanor Niccols, a resident of Uniontown, was married to Gerald Purcell FitzGerald. Of the union were born three children, John, Edward and

Gerald. In 1906 husband and wife instituted divorce proceedings against one another, and by agreement dated December 6, 1906,—executed by them, Josiah V. Thompson and Charles E. Lenhart, and recorded in Fayette County—FitzGerald covenanted that after dissolution of the marriage he would pay to Thompson, Lenhart and himself, as trustees, (1) so much of his share of the annual profits accruing from Fayette Coke Company and Shamrock Supply Company—partnerships operating in Fayette County and composed of FitzGerald and Lenhart—as would yield an annuity of $15,000 per annum for three years and thereafter $20,000 per annum, to be paid to his wife for life; (2) one-third of his share of the annual profits, to be invested until there should accumulate the sum of $300,000, one-half of the income therefrom to be paid to his wife for life, and the other half either to accumulate or to be expended for the benefit of the children; or the trustees, in their discretion, might pay the entire income to his wife until the eldest child attained the age of twenty-one years; as each child became twenty-one he was to receive his share of the income as of right, and on the death of the wife and after the youngest child had attained the age of twenty-one the trustees were to distribute the remainder of the fund and all accumulations thereon among the surviving children. The agreement provided that in the event of the death or resignation of any of the trustees the two remaining should appoint a successor, or on their failure to do so either of them, and also the wife, should have the right to petition the Court of Common Pleas of Fayette County to fill the vacancy. The wife agreed to relinquish all rights of dower and alimony, and there were provisions for the custody and control of the children.

The marriage was dissolved by Act of Parliament in 1907, and the stipulated payments were duly made until 1910. In that year a bill in equity was filed in the Fayette County court by Thompson as trustee, Mrs.

FitzGerald, and the three children by their guardian ad litem, against FitzGerald and Lenhart as trustees, FitzGerald individually, and the Fayette Coke Company and Shamrock Supply Company, asking the court to remove FitzGerald and Lenhart as trustees, to declare and establish a lien upon the properties of the companies in order to secure the payment of the sums provided for in the agreement, to construe the trust agreement and instruct the trustees accordingly, to require FitzGerald and Lenhart, as members of the partnerships, to account for and pay into the trust, or to a sequestrator or receiver to be appointed by the court, the proper share of FitzGerald's profits and make such subsequent accountings as might be necessary during the term of the agreement, and to restrain defendants from alienating or encumbering any of the properties of the companies. Answers were filed to the bill. That of FitzGerald asked, by way of counter relief, that the agreement of 1906 be declared null and void, that Thompson be ordered to account to the trust for moneys received by him and be removed from his office as trustee of the fund for the children. The suit culminated in 1911 in a decree which—affirmed on appeal to this court, 233 Pa. 242—ordered defendants to pay the amounts then remaining due under the agreement, adjudged the payments stipulated in the agreement to be a lien on FitzGerald's interest in the real estate owned by Fayette Coke Company, removed FitzGerald from his office as trustee, directed him to account for and pay over to the trust all sums in his hands held as trustee, and restrained him from alienating or encumbering his interest in the property of the companies until the sum of $300,000 should have accumulated in the fund for the children.

In place of FitzGerald, William M. Thompson was appointed a trustee by Thompson and Lenhart; he resigned in 1915 and William W. Parshall was appointed in his stead. In that same year Josiah V. Thompson,

Lenhart and Parshall, the then trustees, filed a petition with the Fayette County court alleging that disputes had arisen between them and FitzGerald in regard to the proper construction of the agreement as to the profits of Fayette Coke Company, and that an agreement had been reached whereby FitzGerald was to assign to the trustees his interest in the sinking fund of that company, and also to pay to them certain additional sums during a period of seven years, aggregating the sum of $400,000, these payments to be secured by a mortgage to the trustees on FitzGerald's undivided interest in the real estate of the Fayette Coke Company. The payments were to be invested by the trustees, and the net income, together with the interest on the mortgage, was to be applied to the payment of the wife's annuity, and upon her death the $400,000, or such part thereof as had then accumulated, was to be returned to FitzGerald and the mortgage satisfied. The petition prayed the court to modify the decree of 1911 so as to permit this new agreement to become effective. Accordingly the court entered such a decree.

In 1918 the resignation of Josiah V. Thompson, and in 1919 that of Lenhart, was presented to the court and it was ordered that they be discharged from further accountings. Their places were supplied by G. S. Harah and Andrew A. Thompson, these appointments being approved and confirmed by the court. In 1925 the trustees, Harah, Andrew A. Thompson and Parshall, filed their first and partial account, which was duly advertised and confirmed. On July 7, 1930, a second and partial account of the trust was filed, this time by Parshall and Andrew A. Thompson as surviving trustees, Harah having died. Robert J. Arnett was appointed to succeed Harah and his appointment was confirmed by the court.

The present controversy started with the filing of a bill in equity in the District Court of the United States for the Western District of Pennsylvania, on July 8,

1930, by Mrs. FitzGerald, who by remarriage had become Princess Lida of Thurn and Taxis and a citizen of Hungary, together with her eldest son John, then a citizen of New York, against Andrew A. Thompson, Parshall and Arnett, trustees, and the administrators of the estate of G. S. Harah, the deceased former trustee, all citizens of Pennsylvania. The bill alleged that there was then in the wife's alimony fund upwards of $456,-000, and in the children's fund upwards of $315,000, part of these sums including undistributed income, that among the investments in the alimony fund were certain mortgages on which interest and principal were long overdue and which were alleged to be unfit investments of trust funds improperly made by the trustees, that there were other securities in the trust which had caused losses, and that the trustees were mismanaging the trust estate, had failed to render proper accounts, and were not fit persons to act as trustees. The bill prayed that the trustees be required to file an account, that they be removed as trustees, and that all trustees under the deed of trust be required to give bond with surety for the faithful performance of their duties. After a motion to dismiss the bill was denied by the District Court, the trustees filed an answer alleging that the mortgages complained of were lawful investments, denying the allegations as to losses, mismanagement of the estate and a failure to render accounts, and declaring that itemized statements of the funds had been furnished annually to the Princess, that an account had been filed and confirmed in the Fayette County court in 1925, and that another account, filed July 7, 1930, was then awaiting confirmation in that court.

Nothing further was done in the equity proceeding in the federal court for several years. In April, 1937, the complainants there filed an amendment to their bill, specifying certain bonds and mortgages in the trust funds which they asserted were illegal investments, and alleging that the amount of the funds invested in mort-

gages on properties in Uniontown was too great. For the prayer of the original bill asking for the filing of an account there was substituted one that the trustees be required to restore to the funds "the moneys lost by their illegal and negligent conduct." To the amended bill the trustees filed an answer stating that practically all of the bonds and mortgages challenged by the complainants had been included in the account filed in the Fayette County court in 1925, or in that filed in 1930, or in both, that to the latter account exceptions had been filed and were pending in that court, that, while losses had occurred in some of the investments, accretions on others more than compensated therefor, and that the criticisms made of the specified investments were not justified.

Meanwhile, on May 1, 1937, the trustees had filed a petition in the Fayette County court setting forth that the prosecution of the suit in the federal court constituted an interference with the exclusive jurisdiction of the state court, and praying for a decree restraining the Princess and her son John from further prosecution of that action. A rule to show cause why the restraining order should not issue was allowed. The Princess filed an answer alleging that the county court never had control and possession of the trust funds, that there was no controversy there pending when the bill in equity was filed in the District Court, and that the accounts filed by the trustees were ex parte proceedings, and denying that the state court had exclusive jurisdiction over the subject matter of the suit in the federal court. On June 29, 1937, the Fayette County court made the trustees' rule absolute, and entered a decree enjoining the Princess and John FitzGerald from prosecuting the equity suit in the federal court. The present appeal, taken on July 6, 1937, is by the Princess and her son from that decree of the court below. At the same time John FitzGerald filed a petition in the United States District Court to restrain the trustees from pro-

ceeding further in the Court of Common Pleas of Fayette County. After an answer was filed by the trustees, the District Court, on September 18, 1937, made an order fixing a hearing "on the jurisdictional issue" for November 8, 1937, and meanwhile enjoined the trustees as prayed in the petition. On July 19, 1937, the trustees had filed in the Fayette County court a third and partial account of the two funds in the trust, to which exceptions were filed; testimony was also taken on the exceptions to the second account. The hearing fixed by the District Court was duly had, but no decision has thus far been rendered by that court.

In *Peck v. Jenness*, 48 U. S. 612, 624, 625, it was said: "It is a doctrine of law too long established to require a citation of authorities, that, where a court has jurisdiction, it has a right to decide every question which occurs in the cause, and . . . where the jurisdiction of a court, and the right of a plaintiff to prosecute his suit in it, have once attached, that right cannot be arrested or taken away by proceedings in another court. These rules have their foundation, not merely in comity, but on necessity. For if one may enjoin, the other may retort by injunction, and thus the parties be without remedy; being liable to a process for contempt in one, if they dare to proceed in the other." The present case is a concrete embodiment of these apprehended possibilities. An impasse exists as the result of each of two courts enjoining parties litigant from proceeding in the other.

The federal court, having all the equity jurisdiction possessed by the High Court of Chancery in England at the time of the adoption of the Judiciary Act of 1789, undoubtedly could have entertained the bill filed by appellants had there been no antecedent proceedings in the state court. The present question is whether, in view of those proceedings, the Fayette County court had obtained a jurisdiction over the subject matter which precluded action in any other court.

It is firmly settled that a prior suit in a state or federal court which does not deal, either actually or potentially, with specific property or objects, and in which nothing more than a personal judgment is sought, not only does not prevent another suit from being brought for the same cause in the court of the other jurisdiction, but does not even furnish ground for a plea in abatement to the second action: *Stanton v. Embrey,* 93 U. S. 548; *Gordon v. Gilfoil,* 99 U. S. 168; *Kline v. Burke Construction Co.,* 260 U. S. 226; *Merritt v. American Steel-Barge Co.,* 79 Fed. 228, 232; *W. E. Stewart Land Co. v. Arthur,* 267 Fed. 184; *Holmes County, Miss. v. Burton Construction Co.,* 272 Fed. 565. In such a case the first court in which suit was instituted is not ousted of its jurisdiction, nor delayed or obstructed in its exercise thereof, nor is there any resulting conflict of authority. If a judgment is rendered in the second action before the first is tried, it will support a plea of res adjudicata in the first suit if the issue and the parties are the same.

In actions in rem the law is otherwise. "It is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is *in rem,* the effect is to draw to the federal court the possession or control, actual or potential, of the *res,* and the exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's juridiction": *Kline v. Burke Construction Company,* 260 U. S. 226, 229. In such cases, therefore, the rule is that the court which first acquires

jurisdiction of specific property by the possession thereof, or by the commencement of a suit from which it appears that it is necessary to a determination of the controversy, or to the enforcement of the prospective judgment or decree, for the court to have control and dominion over the property, thereby withdraws it from the jurisdiction of every other court so far as is necessary to accomplish the purpose of the suit, and the court is entitled to retain such control as is requisite to effectuate its final judgment or decree free from the interference of every other tribunal. "That *res* is as much withdrawn from the judicial power of the other [court], as if it had been carried physically into a different territorial sovereignty": *Covell v. Heyman,* 111 U. S. 176, 182. The tribunal whose jurisdiction first attaches "holds it to the exclusion of the other until its duty is fully performed and the jurisdiction invoked is exhausted": *Taylor v. Taintor,* 83 U. S. 366, 370.

In *Byers v. McAuley,* 149 U. S. 608, where a decedent's estate was being administered in an orphans' court, the United States Supreme Court reversed the decree of a federal Circuit Court which directed the administrator of the estate to file an account and formulated a schedule of distribution. The court said (pp. 612, 620) : "It is obvious from the decree which was entered that the Circuit Court of the United States assumed full control of the administration of the estate. . . . The decree as a whole cannot be sustained, unless upon the theory that the Federal court had the power on the filing of this bill to take bodily the administration of the estate out of the hands of the state court, and transfer it to its own forum. . . . Our conclusion . . . is that the Federal court erred in taking any action or making any decree looking to the mere administration of the estate. . . ."

"The doctrine is well settled that when a court, in the progress of a suit properly pending before it, takes possession of property, either under a writ of replevin

or attachment, or by other mesne or final process, or by the appointment of a receiver or assignee, its jurisdiction over the property for the time being becomes exlusive, and no other court can lawfully interfere with the possession so acquired. . . . The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of coördinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. . . . The doctrine in question is not limited in its application to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, *administer trusts* [italics supplied], or liquidate insolvent estates, and in all other suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of specific personal or real property. In cases of the latter kind, the rule is that the tribunal which first acquires jurisdiction of the cause by the issuance and service of process is entitled to retain it to the end, without interference or hindrance on the part of any other court": *Merritt v. American Steel-Barge Co.,* 79 Fed. 228, 231.

In *Farmers' Loan & Trust Co. v. Lake Street Elevated R. R. Co.,* 177 U. S. 51, it was held that where a Circuit Court of the United States had obtained jurisdiction of a bill to foreclose a corporate mortgage, a state court could not thereafter entertain proceedings for the removal of the trustee under the mortgage, the appointment of a new trustee, and the enjoining of the foreclosure proceedings. The Supreme Court said (p. 61): "The possession of the *res* vests the court which has first acquired jurisdiction with the power to hear and

determine all controversies relating thereto, and for the time being disables other courts of coördinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons." And the court then proceeded with the same phraseology as in the opinion last quoted: "Nor is this rule restricted in its application to cases where property has been actually seized under judicial process before a second suit is instituted in another court, but it often applies as well where suits are brought to enforce liens against specific property, to marshal assets, *administer trusts,* [italics supplied] or liquidate insolvent estates, and in suits of a similar nature where, in the progress of the litigation, the court may be compelled to assume the possession and control of the property to be affected. The rule has been declared to be of especial importance in its application to Federal and state courts." This same language was quoted in *Palmer v. State of Texas,* 212 U. S. 118, 129.

In *Waterman v. Canal-Louisiana Bank & Trust Co.,* 215 U. S. 33, the doctrine of *Byers v. McAuley,* supra, was reaffirmed and applied, the court saying (p. 45): "In view of the cases cited, and the rules thus established, it is evident that the bill in this case goes too far in asking to have an accounting of the estate, . . . for it is the result of the cases that, in so far as the probate administration of the estate is concerned in the payment of debts, and the settlement of the accounts by the executor or administrator, the jurisdiction of the probate court may not be interfered with."

Nor is it necessary, for the rule to apply, that the first court must have actual possession of the res involved in the litigation. In *Amusement Syndicate Co. v. El Paso Land Improvement Co.,* 251 Fed. 345, suit was brought in a state court to compel the removal of certain structures upon land. A temporary injunction

was issued. It was held that the federal court could not thereafter entertain a petition involving the same subject matter, the court saying (p. 348) : "If these proceedings have not brought the specific property involved —the res—into the actual possession of the state court, they have at least given that court dominion and control over it. It is true that injunction acts only in personam; but it is also true that possession of specific property may be, and often is, effected by and through injunctive process. These considerations I think clearly distinguish this case from one strictly in personam, where only a personal judgment is in view, and brings it within the rule that as between two courts of concurrent jurisdiction the one which gets the case first holds it to the exclusion of the other."

The res, priority of jurisdiction over which makes such jurisdiction exclusive, need not consist of specific property or anything tangible, but may be merely a status, such as marriage, or the probate of a will. The test, as already stated, is not possession of the property, but jurisdiction over the res: *Dennison Brick & Tile Co. v. Chicago Trust Co.,* 286 Fed. 818, 820. So in *Brown v. Pacific Mutual Life Ins. Co.,* 62 Fed. (2d) 711, it was held that where a suit was instituted in a federal court to obtain the rescission and cancellation of a policy of life insurance, a subsequent action in a state court to recover on the policy was properly enjoined.

In *Penn General Casualty Co. v. Pennsylvania,* 294 U. S. 189, it was said (p. 195) : "Where the judgment sought is strictly *in personam,* for the recovery of money or for an injunction compelling or restraining action by the defendant, both a state court and a federal court having concurrent jurisdiction may proceed with the litigation, at least until judgment is obtained in one court which may be set up as *res adjudicata* in the other. . . . But if the two suits are *in rem,* or *quasi* [italics supplied] *in rem,* requiring that the court or

its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. . . . The principle, applicable to both federal and state courts, is established that the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other."

Apparently the latest expression by the Supreme Court of the United States upon the principles here involved is that in the case of *United States v. Bank of New York & Trust Co.,* 296 U. S. 463, where the court said (p. 477) : "In both these cases the proceedings in the state court were *quasi in rem.* Control of the funds was essential to the exercise of the court's jurisdiction to protect the rights of claimants. . . . The principle, applicable to both federal and state courts, that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted. It applies as well where suits are brought to marshal assets, *administer trusts* [italics supplied], or liquidate estates, and in suits of a similar nature, where, to give effect to its jurisdiction, the court must control the property. . . . If the two suits are *in rem* or *quasi in rem,* so that the court must have possession or control of the *res* in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. . . . This principle is applied in the discharge of the long recognized duty of this court to give effect to such 'methods of procedure as shall serve to conciliate the distinct and independent tribunals of the States and of the Union, so that they may coöperate as harmonious members of a judicial system coextensive with the United States.' "

It is true, as held in many cases,* that where the action brought in the federal court is merely to establish an interest or right to share in property being administered in a state court, it may properly be prosecuted, since a judgment in such a suit would not disturb the control of the state court over the fund or estate as to which it had taken jurisdiction. There is, however, a limitation that the exercise of such jurisdiction of the federal court does not include the power to draw to it the administration of the estate or to interfere in any way with its management or control. "Such proceedings are not *in rem;* they seek only to establish rights; judgments therein do not deal with the property and order distribution; they adjudicate questions which precede distribution": *Commonwealth Trust Co. of Pittsburgh v. Bradford,* 297 U. S. 613, 619.

In the present case there is not involved any controversy as to the right of appellants to participate, or the extent of their interest, in the trust funds which, for more than twenty-seven years, have been administered under the direction and control of the Common Pleas Court of Fayette County. The relief sought by them in the federal court under their amended bill of complaint is to require the trustees to restore to the funds moneys alleged to have been lost by their illegal and negligent management of the trust, to remove them as trustees, and to make all trustees under the deed of trust give bond with surety for the faithful performance of their duties. Such relief is concerned exclusively with the

* *Suydam v. Broadnax,* 39 U. S. 67; *Green's Administratrix v. Creighton,* 64 U. S. 90; *Yonley v. Lavender,* 88 U. S. 276; *Byers v. McAuley,* 149 U. S. 608; *Security Trust Co. v. Black River National Bank,* 187 U. S. 211; *Waterman v. Canal–Louisiana Bank & Trust Co.,* 215 U. S. 33; *Riehle v. Margolies,* 279 U. S. 218; *Commonwealth Trust Co. of Pittsburgh v. Bradford,* 297 U. S. 613; *General Baking Co. v. Harr,* 300 U. S. 433; *Harrison v. Moncravie,* 264 Fed. 776; *Commonwealth Trust Co. of Pittsburgh v. Atwood,* 78 Fed. (2d) 92.

administration of the trust. It is, of course, true that the trust res is not in the possession of the Fayette County court as would be property in a receivership, but it seems reasonably clear that the administration of a trust falls properly within the class of cases governed by the principle giving to the court first assuming jurisdiction in proceedings *quasi in rem* the exclusive right to determine questions of administration and management, as distinguished from the adjudication of individual rights and interests in the res. Not only do the authorities previously quoted specifically include *trust administration* in their statement of the rule, but, what is of chief importance, the reason underlying the rule applies forcibly to trust estates. In the present case the appointment of all the successive trustees was either made or confirmed by the state court. One of their accounts has been confirmed by that court, and two others have been filed and are there pending, exceptions having been taken to them. In exercising jurisdiction over a trust estate a court may frequently be obliged to make orders concerning even the physical custody and safekeeping of specific items of the trust property, or authorizing or directing their sale and the making of reinvestments; one order of the court below in the present case, under date of November 6, 1933, directed the trustees to deposit certain bonds under a corporate reorganization plan for conversion into new debentures. An accounting by fiduciaries is in itself a proceeding quasi in rem, in the sense that it not only adjudicates the legality of the investments constituting the trust, but also, if it results in a surcharge, orders payment and restoration of moneys to the trust fund, that is to the res. Such a surcharge is not a judgment to pay money to individuals as in an ordinary personal action. Thus if appellants were successful in the proceedings under their bill in equity no judgment would or could be rendered for payment to *them* of any money;

there could be merely an order for restitution to the trustees themselves as continuing trustees or to their successor trustees; in other words, the recovery would be by the trust fund and not by appellants, who can gain therefrom only upon distribution of the income and ultimately of the corpus of the trust, as prescribed in the agreement by which it was created.

The line of distinction between proceedings in personam and those in rem to determine whether or not the jurisdiction acquired by the court in which they are first instituted is exclusive is not to be drawn with academic nicety. The question is rather one of practical regard for the orderly and efficient administration of justice. If, as here, a court has made or confirmed the appointment of trustees, has audited, and continues to be engaged in auditing, their accounts, and, in general, has controlled the management and administration of trust funds for a considerable period of time, and another court were to attempt to remove such trustees, appoint others, pass upon the propriety of investments already investigated and adjudicated or in process of investigation and adjudication by the first court, and make orders on the trustees as to the furnishing of surety bonds and similar matters, the management and administration of the trust would be thrown into chaotic condition. As has already been pointed out, practically all the investments specifically attacked in the bill filed by appellants in the federal court were contained in the account audited and confirmed by the county court in 1925 or in the 1930 account now pending audit, or in both. Unless such successive steps in the administration of a trust be regarded as a unit, the result would be, not only that partial accounts could be successively filed and adjudicated in different courts, but the same account could be audited simultaneously by two courts, with the obvious possibility of contradictory orders regarding the custody and sale of investments and the liability of the trustees.

514

The order of the court below making absolute the rule of the trustees to show cause why appellants should not be enjoined and restrained from prosecuting the suit in equity in the District Court of the United States for the Western District of Pennsylvania is affirmed; cost to be paid by appellants.