## Craig Estate

*McBride & McBride*, for petitioner.

*Stranahan & Sampson*, and *Pepper, Bodine, Stokes & Hamilton*, for respondents.

RODGERS, P. J., July 7, 1954.—This matter comes before the court after argument on a rule on Mary S. Stahl and Eric C. Stahl, trustee, to show cause, if any, why they should not be restrained from proceeding with an action commenced by them at no. 11857 in the United States District Court for the Western District of Pennsylvania.

### Statement of the Record

The records of the Orphans' Court of Mercer County show that Mary Sweetser Craig died on October 22, 1950, a resident of Grove City, Mercer County, Pa. Decedent left a will which has been probated in the register's office of Mercer County and is of record in will book, vol. 52, page 463, in which decedent named

Clifford G. Harshaw, hereinafter called Harshaw, as executor of her estate.

This will, inter alia, devised one third of the estate to testatrix's husband, Clyde B. Craig; a legacy of $500.00 to Arthur Smith, son of testatrix; one half of the residue to petitioner, Mary S. Stahl, who is a resident of Tulsa, Okla., and the remaining one half of the residue to petitioner, Eric C. Stahl, of Tulsa, Okla., in trust for a daughter of testatrix named Edith Smith Garrett for life, with remainder to petitioner, Mary S. Stahl, if then living, but if not to petitioner's children.

Letters testamentary upon the estate of Mary Sweetser Craig, hereinafter called the Mary Craig estate, were granted by the Register of Wills of Mercer County to Harshaw and remain in full force and effect.

Harshaw has since been engaged in the discharge of his duties as executor of this estate during the course of which he filed his first and partial account as executor of the Mary Craig estate on January 14, 1952. This account was duly confirmed by the Orphans' Court of Mercer County on March 14, 1952, and no exceptions were filed to the decree. On January 2, 1953, a second and final account of his administration was filed by Harshaw.

On March 2, 1953, Mary S. Stahl and Eric C. Stahl, trustee, hereinafter called the Stahls, filed a petition in the Orphans' Court of Mercer County to strike off the second and final account, and a petition for distribution under the first and partial account. The petitions were heard by this court (Rowley, P. J.) on June 1, 1953, at which time testimony was taken. Argument was heard by this court on November 9, 1953. On November 30, 1953, this court entered an order dismissing the petition to strike the second and final account, and after amending the account because of certain additional receipts and disbursements, confirmed the

second and final account nisi and directed distribution of the balance shown thereon if no exceptions were filed within 10 days.

On December 9, 1953, the Stahls filed exceptions in this court to the order of November 30, 1953, and also filed exceptions to the second and final account as amended. These exceptions have not been finally acted upon, remaining pending in this court.

On June 1, 1953, the Stahls filed a petition in this court to remove Harshaw as executor of the Mary Craig estate. An answer to this petition was filed by Harshaw on July 1, 1953, and no action to pursue this matter has been taken by the Stahls.

On July 24, 1951, Clyde B. Craig, husband of Mary Sweetser Craig, died a resident of Grove City, Mercer County, Pa. Clyde B. Craig left a will which has been duly probated in the register's office of Mercer County, and is of record therein: Will book, vol. 53, page 135.

By his will decedent devised one half of his estate to his sister, Dorothy M. Harshaw, wife of Clifford G. Harshaw; one quarter of his estate to his nephew, Clifford G. Harshaw, Jr., the son of Clifford G. Harshaw; and one quarter of his estate to Clifford G. Harshaw, Jr., in trust for his children, Margaret T. Harshaw, Elizabeth C. Harshaw, Sally C. Harshaw and Patricia B. Harshaw, who are the grandchildren of Clifford G. Harshaw.

Letters testamentary on the estate of Clyde B. Craig, hereinafter called the Clyde Craig estate, were issued to Harshaw on July 30, 1951, in accordance with the will by the Register of Wills of Mercer County. An inventory and appraisement of the real and personal property of the estate was filed September 24, 1951. Certain distributions have been made by the executor and a first and final account was filed by Harshaw on March 8, 1954.

On December 7, 1953, the Stahls brought civil action no. 11857, in the United States District Court for the Western District of Pennsylvania against Clifford G. Harshaw, individually, and as executor of the estate of Mary Sweetser Craig, deceased, and as executor of the estate of Clyde B. Craig, deceased. The essence of this action was that for a period of time commencing in 1936 and continuing until the time of the death of Mary Sweetser Craig, Clyde B. Craig, her husband, had received as her agent or trustee large sums of money belonging to her and that Clyde B. Craig during his lifetime had failed to account for these moneys either to Mary Sweetser Craig or to the Mary Craig estate or to Harshaw as executor of her estate. The petition or action stated further that Harshaw in dereliction of his duty as fiduciary never demanded an accounting from Clyde B. Craig during Clyde B. Craig's lifetime. The complaint further alleges that the request of Harshaw as executor of the Mary Craig estate to bring an action for accounting against Harshaw as executor of the Clyde Craig estate would be futile because such an action would be impossible under the relevant principles of law; in effect because Harshaw could not sue himself.

The complaint concludes with an allegation that as a result of the receipt of these moneys by Clyde B. Craig as trustee or agent of Mary Sweetser Craig over a period of about 15 years, there is need for an accounting by Harshaw in the Clyde Craig estate. The Stahls in their action prayed for relief including "(a) that the defendant, as executor of the estate of Clyde B. Craig, be ordered to account to plaintiffs for all the principal and income of Mary Sweetser Craig received by Clyde B. Craig.

"(b) That the defendant, as executor of the estate of Clyde B. Craig, be ordered to pay over to the estate

of Mary Sweetser Craig the amount which said account may show to be due, with interest thereon.

"(c) Such other equitable or legal relief as this court may deem proper.

"(d) The costs of this action."

On December 15, 1953, this court (Rowley, P. J.) entered a rule against the Stahls to show cause, if any, why they should not be restrained from prosecuting or proceeding with the district court action which they had instituted on December 7th. An answer to this petition was filed by the Stahls on December 24, 1953.

On December 17, 1953, this court (Rowley, P. J.) appointed Cyril T. Garvey, Esq., Sharon, Pa., as auditor in the Mary Craig estate. The auditor held a hearing on January 22, 1954, "to pass upon claims, consider exceptions to account, award distribution of funds in the hands of the accountant, and to dispose of any other matters which may be submitted to him", and an adjourned hearing was held by the auditor on February 5, 1954. The auditor's report has not been filed.

On January 18, 1954, the Stahls presented a petition to this court for a citation on Harshaw as executor of the Mary Craig estate to show cause why he should not make distribution to the Stahls in accordance with the decree of distribution entered by this court on November 30, 1953, and for all other proceedings in connection with that decree, to be stayed meanwhile. On the same date this court (Rodgers, P. J.) entered an order refusing the citation. On April 19, 1954, the Stahls petitioned this court to stay all proceedings in the Clyde Craig estate pending the determination of the Federal court action. A rule to show cause why such a rule should not be made absolute was granted petitioners, the rule being returnable on May 3, 1954. This matter has not been heard in argument by this court.

*The Questions Involved*

1. Does this court have the power in any case to restrain parties from proceeding in an action instituted by them in a Federal district court?

2. Is this a proper case for the exercise of this power?

The first question has been clearly answered in the affirmative by the Supreme Court of the United States in Princess Lida of Thurn and Taxis et al. v. Thompson et al., 305 U. S. 456, 467, 59 Supreme Court Reporter 275, 281, 83 L. Ed. 285. The court said:

"The Common Pleas Court could not effectively exercise the jurisdiction vested in it without a substantial measure of control of the trust funds. Its proceedings are, as the court below held, quasi in rem, and the jurisdiction acquired upon the filing of the trustees' account is exclusive. The District Court for the Western District of Pennsylvania is without jurisdiction of the suit subsequently brought for the same relief, and the petitioners were properly enjoined from further proceeding in that court. The judgment is affirmed."

The second question, of course, then becomes critical here. Is this a proper case for this court to exercise its power to restrain? In the Princess Lida case the general applicable law is stated as follows (305 U. S. 456, 465, 59 S. Ct. 280) :

"Certain it is, therefore, that if both courts were to proceed they would be required to cover the same ground. This of itself is not conclusive of the question of the District Court's jurisdiction, for it is settled that where the judgment sought is strictly in personam, both the state court and the federal court, having concurrent jurisdiction, may proceed with the litigation at least until judgment is obtained in one of them which may be set up as res judicata in the other. On the other hand, if the two suits are in rem,

or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other. We have said that the principle applicable to both federal and state courts that the court first assuming jurisdiction over property may maintain and exercise that jurisdiction to the exclusion of the other, is not restricted to cases where property has been actually seized under judicial process before a second suit is instituted, but applies as well where suits are brought to marshall assets, administer trusts, or liquidate estates and in suits of a similar nature where to give effect to its jurisdiction the court must control the property. The doctrine is necessary to the harmonious cooperation of federal and state tribunals."

A careful consideration of the Princess Lida case and of the numerous other cases covering this field reveals that while the opinions allude at length to the question of whether the suits are in rem, quasi in rem, or in personam, the touchstone or lodestar of the courts in their determinations is a more fundamental matter.

That is, do the cases in fact create an actual conflict between the courts which would disturb the harmonious operation of the Federal and State tribunals within the framework of the Republic? Thus, all the cases appear to search for the decision which will tend to "conciliate the distinct and independent tribunals of the states and of the union, so that they may cooperate as harmonious members of a judicial system, co-extensive with the United States" (United States v. Bank of New York and Trust Company, 296 U. S. 463, 478, 56 S. Ct. 343, 347, 80 L. Ed. 331); or as the Supreme Court of Pennsylvania said in Thompson v. FitzGerald, 329 Pa. 497, 513, 198 Atl. 58, 66:

"The line of distinction between proceedings in personam and those in rem to determine whether or not the jurisdiction acquired by the court in which they are first instituted is exclusive is not to be drawn with academic nicety. The question is rather one of practical regard for the orderly and efficient administration of justice."

The courts have also given consideration to the question of which tribunal is as a matter of custom and fact more closely concerned with the subject matter of the controversy.

In cases involving the liquidation or control of State banks or State supervised insurance companies, the United States Supreme Court has generally protected the jurisdiction of the State courts. See United States v. Bank of New York Co., 296 U. S. 463, 475, 56 S. Ct. 343, 346, and Pennsylvania v. Williams, 294 U. S. 176, 187, 55 S. Ct. 380, 79 L. Ed. 841.

On the other hand, where the control of a matter dealing with a Federal problem is involved the jurisdiction of the Federal court has generally been upheld. See Commonwealth Trust Co. of Pittsburgh v. Bradford, 297 U. S. 613, 619, 56 S. Ct. 600, 80 L. Ed. 920, and Markham v. Allen, 326 U. S. 490, 66 S. Ct. 296, 90 L. Ed. 256.

What then is the nature of the action in the Orphans' Court of Mercer County? It is the proceedings necessary for the administration of an estate of a decedent by an executor acting under a grant of letters by the register of wills of the county, which grant constituted the executor the "appointed representative of the Court": McGovern's Estate, 322 Pa. 379, 383, 186 Atl. 89, 91. From the moment of the grant of his letters testamentary in the Clyde Craig estate, Harshaw was subject to a statutory mandate to file his account in this court at the expiration of six months from the grant of letters or when directed to do so by this court:

Act of April 18, 1949, P. L. 512, sec. 701, 20 PS §320.701.

Mathews Trust Estate, 339 Pa. 219, 13 A. 2d 9, cited by the Stahls, is not in conflict with this proposition. In that estate the court was dealing with an inter vivos trust created in such a manner that the court of common pleas of two counties had possible jurisdiction over its administration from its inception. At page 222 the court said:

"The jurisdiction first invoked was that of the Philadelphia County Court, and, so long as its actual supervision of the trust continued, comity required that control over the accounts of the fiduciaries in matters affecting the management of the estate remain in that court."

This explains the court's statement that "no conflict of jurisdiction arose in the present case until the trustee attempted to file its account with both tribunals." Simpson's Estate, 253 Pa. 217, 98 Atl. 35, clearly recognizes the proposition that the time of assumption of jurisdiction by the orphans' court over an estate is dependent upon the nature of the estate or trust and the statute which governs it. Our statutes state that: "The Orphans' Court shall have exclusive jurisdiction of:

"(1) The administration and distribution of the real and personal property of decedents' estates, and,

"(6) The appointment, control, *settlement of the accounts of*, removal and discharge of . . . all fiduciaries of estates and trusts of which the court has jurisdiction": 20 PS §2080.301. (Italics supplied.)

Our Supreme Court in Mathews Estate, 339 Pa. 219, 222, 13 A. 2d 11, said:

"In Thompson v. Fitzgerald, 329 Pa. 497, 198 Atl. 58 . . . we pointed out the many dangers and chaotic conditions which would arise if two courts should endeavor to exercise concurrently jurisdiction over a

trust. We have held that jurisdiction to supervise the administration of a trust is *quasi in rem*: Thompson v. Fitzgerald, supra; Simpson's Estate, 253 Pa. 217, 98 Atl. 35."

In Wormley Estate, 67 D. & C. 616, 618, in the Orphans' Court of Philadelphia County, Judge Bolger, in discussing proceedings in the administration of an estate in that court, said:

"The action in this court is quasi in rem. The assets of the estate are technically in the custody of the court and since the Ohio proceeding is not in rem, but is purely personal, it is not the duty of this court to await the determination of the other proceeding."

What is the nature of the action in the Federal district court? As stated by counsel for the Stahls in their brief, it "was designed to compel Harshaw as executor of the Clyde estate to account for moneys belonging to the estate of Mary".

Thus, it appears clear that if both actions were to continue Harshaw would be required to account to two separate tribunals exercising concurrent jurisdiction over a fiduciary and his estate. This presents an intolerable situation.

As the Supreme Court of the United States said in Waterman v. Canal-Louisiana Bank Co., 215 U. S. 33, 45, 30 S. Ct. 10, 13, 54 L. Ed. 80:

". . . It is evident that the bill in this case goes too far in asking to have an accounting of the estate, such as can only be had in the Probate Court having jurisdiction of the matter; for it is the result of the cases that in so far as the probate administration of the estate is concerned in the payment of debts, and the settlement of the accounts by the executor or administrator, the jurisdiction of the probate court may not be interfered with. It is also true, as was held in the court below in the case at bar, that the prior pos-

session of the state probate court cannot be interfered with by the decree of the federal court."

And after stating that the Federal court could determine whether petitioner had an interest in the estate the court said:

"If the federal court finds that the complainant is entitled to the alleged lapsed legacy and the residue of the estate, while it cannot interfere with the probate court *in determining the amount of the residue arising from the settlement of the estate in the court of probate,* the decree can find the amount of the residue, as determined by the administration in the probate court in the hands of the executor, *to belong to the complainant,* and to be held in trust for her, thus binding the executor personally": 215 U. S. 33, 46. (Italics supplied.)

The Stahls suggest that they ask only a partial accounting by Harshaw. This does not aid them. They allege a commingling of the two estates since 1936. Would it be possible to determine the merits of this allegation without a full accounting of the estate or more accurately, of both estates? This court thinks not. Even if it were possible the field covered by the account in the Federal court could well be in conflict with the portion of the executor's accounting in this court covering that portion of the whole.

The Stahls also allege that they cannot get a hearing in this jurisdiction because of Harshaw's executorship in both estates. The argument is without merit. If there was anything improper concerning Harshaw's position or conduct, the matter could have been brought to a hearing in this court many months ago. The Stahls in fact petitioned to remove Harshaw in June 1953, but have failed to pursue this remedy.

The Stahls had an absolute right to appear at the hearing of the auditor appointed in the Mary Craig estate as in fact they did appear and there make any

valid claim that the assets of the Mary Craig estate as set forth in the account were not correct. An examination of the testimony taken at the auditor's hearing indicates that no such claim was made there.

The Stahls' argument in their brief is mental gymnastics of the first order. They state that it is impractical to consider surcharging a fiduciary for failure to prosecute a legal claim where proceedings involving the claim itself are pending before a court of competent jurisdiction. They then state that the fact that they commenced the Federal action barred this path. It is clear, of course, this path was not barred prior to their voluntary action in bringing the Federal action. Therefore, the Federal action can hardly be used to their advantage in such an argument. The Stahls thus have two perfectly proper remedies under Pennsylvania law whereby they could bring the questions which they have before this court. That is, they could take exception to the account filed by the executor of the Mary Craig estate, and if they felt that there was any misconduct on the part of Harshaw in either estate, or any other reason for his disqualification, they could as a matter of right bring that matter before this court for decision.

The Stahls cite the case of Gallagher, Admr., v. Rogan, 322 Pa. 315, 185 Atl. 707, in support of their argument that the action in the Federal court is an in personam action. The Gallagher case is clearly distinguishable. The issue there was one of jurisdiction over the person of a defendant and had no relation to a question of conflict of jurisdiction between two tribunals. Plaintiff, as an administrator of an estate, was attempting to recover from defendant a certain mortgage on real estate located within the jurisdiction of the court which had been transferred to defendant by the administrator's decedent prior to his death. Defendant was a resident of Montgomery County and

the action was brought in Philadelphia County. The bond and mortgage was in the possession of defendant in Montgomery County. Plaintiff was attempting to get jurisdiction over defendant by alleging that they had jurisdiction over the property in question. The Supreme Court simply decided that the property in question, being personal property, was subject to the principle of mobilia sequuntur personam and therefore would not provide a basis for jurisdiction over defendant, who was in possession of the property outside the jurisdictional limits of the court.

### Conclusions of Law

When Harshaw was appointed executor of the estate of Clyde Craig the assets of that estate were immediately in his exclusive control. They were funds which were an entity, a thing or res; they were a trust fund held by the executor for the use of the creditors and beneficiaries of the estate, and were to be administered and distributed only by the executor. Certainly an action having these funds as the subject matter and dealing with their administration is in rem. The Stahl action in the Federal court is an attempt to call upon this executor to account, at least in part, in a court other than the one whose jurisdiction had first attached. It is the position of this court that the appointment of Harshaw as executor, his various proceedings or actions as executor, his taking into possession the assets of the Clyde Craig estate conferred upon this court complete and exclusive jurisdiction over the assets of this estate, and that as a result no court of coördinate jurisdiction may be called upon to interfere with the subject matter of these proceedings. In other words, this court holds that the funds involved are in the nature of trust funds, that they become so at the moment of the appointment or the granting of letters by the register of wills of this county, that this court has the construc-

tive possession and the actual control thereof, and that the administration of the funds is exclusively within the control of this court.

From the moment that Harshaw was appointed executor of the Clyde Craig estate, he had a statutory responsibility to account in this court for all assets in his possession. To permit an action which would require him to account in the second tribunal would almost of necessity produce an "unseemly conflict" between the two courts which the rule of law set out in the Princess Lida case and many others has been promulgated to prevent. It was long ago stated that "a man cannot serve two masters". The phrase is not inapplicable to this situation.

Unless we were to assume that the courts in their accounting would arrive at precisely the same result, it is certain that the proceedings would produce a direct clash of arms between the two tribunals over the control of the assets of this estate.

Thus, we conclude that the proceedings for the administration of an estate constitute an action in rem in a very real sense and that the continuance of the action in the Federal court, being an accounting of the same subject matter, would in fact create the precise type of conflict which we seek to avoid. This leads us to the decision that the Stahls must be restrained from continuing their action in the Federal court.

### Order

And now, July 7, 1954, the rule to show cause entered in this matter on December 15, 1953, is made absolute and Mary S. Stahl and Eric C. Stahl, trustee, are hereby restrained from further prosecuting or proceeding with civil action no. 11857 in the United States District Court for the Western District of Pennsylvania.