# First Commonwealth Bank v. Fresh Harvest River, LLC

C.P. of Clearfield County, no. 2010 - 1312 - CD.

*Nicholas A. DiDomenico,* for plaintiff.
*Blaise Ferraraccio,* for defendant.

CHERRY, *J.,* September 3, 2010—On July 26, 2010, plaintiff, First Commonwealth Bank (hereinafter "bank"), filed a complaint in confession of judgment in ejectment to obtain possession of a property located at 2592 Oklahoma-Salem Road, DuBois, Pennsylvania. Plaintiff alleges that defendant, Fresh Harvest River, LLC, (hereinafter "FHR") breached the terms of a lease agreement. A writ of confession was filed on July 27, 2010.

On July 30, 2010, FHR filed a verified emergency petition to (1) open and/or strike judgment obtained by confession of judgment; (2) stay the enforcement of a writ of possession; and (3) abate or stay further proceedings on the basis of a prior action pending (hereinafter "petition"). Specifically, it claimed that a proceeding filed in the United States District Court for the Southern District of New York, captioned *Fresh Harvest River, LLC., v. First Commonwealth Bank, et al.*, 10 Civ. 05483, on July 20, 2010, precluded this court from entertaining bank's state action. Alternatively, it argued that the court should stay further proceedings until the federal case is resolved.

The court ordered the writ of possession stayed pending a hearing on the petition. On August 2, 2010, a hearing was held on the petition, at which time both parties were ordered to submit briefs on the issue of lis pendens to the court no later than August 13, 2010. An extension was granted at the request of FHR's counsel, extending the deadline to submit letter briefs to August 16.[1]

For the reasons that follow, the court denies FHR's petition to abate the proceedings on the basis of a prior action pending. In addition, the court denies FHR's request for a stay pending resolution of the federal case. Additionally, the court finds that FHR failed to state a prima facie meritorious defense to bank's complaint in confession of judgment in ejectment.

---

1. Despite this extension, FHR's counsel still failed to timely file its brief with the court. Its brief was filed August 17, 2010.

## I. *Applicability of doctrine of lis pendens*

The purpose of the doctrine of *lis pendens*, or pendency of a prior action, is to protect defendants from having to defend multiple suits on the same cause of action at the same time. *Penox Techs., Inc. v. Foster Med. Corp.,* 546 A.2d 114, 115 (Pa. Super. 1988). A court may either dismiss or stay the later commenced proceeding. *Id.* However, if a party is seeking dismissal, the requirements of the three-pronged identity test, discussed below, must be applied strictly. *Crutchfield v. Eaton Corp.,* 806 A.2d 1259, 1262 (Pa. Super. 2002). On the other hand, when the identity test is not strictly met, but the action involves "a set of circumstances where the litigation of two suits would create a duplication of effort on the part of the parties, waste judicial resources and 'create the unseemly spectacle of a race to judgment,' the trial court may stay the later-filed action." *Id.* (quoting *Norristown Auto Co. v. Hand,* 562 A.2d 902 (Pa. Super. 1989)).

To successfully assert *lis pendens*, the burden is on the moving party to show: (1) the parties are the same, (2) the claims asserted are the same; and (3) the relief requested is the same. *Hessenbruch v. Markle,* 194 Pa. 581 (1900); *Norristown,* supra; *Crutchfield,* supra. The question of a pending prior action is "purely a question of law determinable from an inspection of the pleadings." *Davis Cookie Co. v. Wasley,* 566 A.2d 870, 874 (Pa. Super. 1989).

### A. *Same parties*

The first requirement in order for *lis pendens* to be

applicable is that the parties to each of the actions must be the same. *Hessenbruch*, supra. In a dissenting opinion, Judge Gwilym Price, Jr., argued that the standard has actually been relaxed to "substantially the same." *Raw v. Lehnert*, 357 A.2d 574, 578 (Pa. Super. 1976). Judge Price wrote:

> It is clear that *Hessenbruch* stands for the proposition that the defense of *lis pendens* is not to be thwarted by technical differences between the two questions in question. The plea of *lis pendens* is therefore properly raised when the parties, the causes of action, and the relief sought are either "substantially" or, as the majority indicates, "precisely" the same in both actions. *Id.* (J. Price, dissenting).

Some courts have found this persuasive. See *Gray Bros. Inc. v. Harleysville Ins. Co.*, 47 Pa. D. & C. 3d 506, 525 (Pa. C.P. 1987). This court, however, determines that no matter which standard applies — "same" or "substantially the same" — the result is no different: the action pending before this court involves different parties than those involved in the federal action.

In *Virginia Mansions Condominium Association v. Lampl*, 552 A.2d 275 (Pa. Super. 1988), the court refused to abate the second suit because its parties were neither the same nor substantially the same as those involved in the other. In the first suit, there was one plaintiff and five defendants. *Id.* at 278. In the second case, only one of the five defendants sued the plaintiff. *Id.* The court found that "neither the number nor the identity" of the defendants matched. *Id.* See also *Sullivan v. Ritchey*, 40 Pa. D. & C.

3d 464 (Pa. C.P. 1985) (finding that where only three of five plaintiffs in the second case had filed a proceeding against the same defendants earlier, there was no identity of the parties). Furthermore, it found that the interests of each defendant and the wrongs alleged against each were different. *Lampl*, supra.

Likewise, the parties involved in the present suit are neither the same nor substantially the same. The present case involves just bank and FHR, whereas the federal case involves those parties, in addition to Kerry Inc. and The Kerry Group, LLC (collectively "Kerry"). Kerry's interests differ from Bank's, as do the wrongs FHR asserts against Kerry. Although FHR alleges Kerry and bank colluded together to defeat FHR's purchase of the property, the counts asserted against Kerry differ from those asserted against bank. See complaint, *Fresh Harvest River LLC v. First Commonwealth Bank et al.*, No. 10 Civ. 5483 (S.D.N.Y., July 20, 2010). Claims 1-3 against Kerry assert breach of contract seeking money damages, breach of confidentiality agreement, and tortious interference with contract. *Id.* Claims 4, 5, and 7 against bank asserts breach of contract seeking specific performance and a claim for declaratory judgment and injunctive relief. *Id.* While claim 6 is asserted against both bank and Kerry, *Id.*, the difference between the individually asserted claims is sufficient to distinguish the parties from one another.

To consider Kerry and bank as the same or substantially same party would force bank to defend against claims to which it played no part and has no control. Additionally, it would prejudice bank by requiring resolution of all claims

— its and Kerry's — before it could proceed with its action in ejectment here. Such an end result surely is not what the courts had in mind when it adopted the doctrine of *lis pendens.*

For this reason, the court finds that band Kerry are also not in privity with one another. "Privity is broadly defined as 'mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right.'" *Hillgartner v. Port Auth. Of Allegheny County,* 936 A.2d 131 (Pa. Commw. 2007). In *Hillgartner,* the court concluded the addition of two defendants in a state complaint did not defeat the first prong of the identity test because the defendants were in privity and thus "substantially the same" as the other defendants. *Id.* at 140. There, the two individual defendants were employees of one of the previously named parties. *Id.*

Here, bank and Kerry are separate and distinct business entities. Bank is a banking organization formed under Pennsylvania law, whereas Kerry, Inc. is a supplier of food products with a principal place of business in Wisconsin, and Kerry Group is a multinational food and flavors manufacturing company organized under Irish law and having its principal place of business in Ireland. Complaint, *Fresh Harvest River LLC v. First Commonwealth Bank et al,* No. 10 Civ. 5483 (S.D.N.Y., July 20, 2010), at ¶¶ 3-5. Therefore, there is no relationship which would create privity between the two, and the two are considered different parties for purposes of *lis pendens.*

## B. *Same claims*

Additionally, the court finds the claims involved in the present action and in the federal action differ. In *Nickel v. McNaight*, the court concluded an action in ejectment for wrongful possession differs from an action in assumpsit for breach of contract. 62 Pa. D. & C. 521, 525 (Pa. C.P. 1948). See also *Penn-Mont Benefits Servs., Inc. v. Great Southern Life Ins. Co.*, 2005 WL 327048 (Pa. C.P. 2005) (confession of judgment action and breach of contract action were not the same); *Comsup Commodities, Inc., v. Osram Sylvania, Inc.*, 2003 WL 22977519 (Pa. Ct. C.P. 2003) (claim for declaratory judgment and claims for breach of contract, promissory estoppel, fraud, and negligent misrepresentation were not the same); *Koppenheffer v. Humble Oil & Refining Co.*, 40 Pa. D. & C. 2d 259 (Pa. C.P. 1966) (claim for ejectment and claim seeking specific performance were not the same).

The causes of action involved here are likewise different. The present action is based on a complaint in confession of judgment in ejectment. The federal case involves breach of contract and tort claims, as well as seeks declaratory judgment and injunctive relief. See complaint, *Fresh Harvest River LLC v. First Commonwealth Bank et al*, No. 10 Civ. 5483 (S.D.N.Y., July 20, 2010). Even if the court limits its review to just the claims filed in the federal suit against bank and not Kerry, the court still concludes the claims are different. See *Id.* (claims 4-7). Therefore, the second prong of the identity test is also not satisfied.

The fact that the two cases may be derived from the same underlying set of facts or even the same contract or

agreement is immaterial to the court's analysis. The state Supreme Court has repeatedly refused to apply *lis pendens* in such cases. See, e.g., *Norristown*, supra, (inapplicable when breach of contract and tort claims arise from same factual events); *Lampl*, supra (inapplicable when same factual events but different causes of action raised and relief sought); *Penox Techs.*, supra (inapplicable when action for declaratory judgment and breach of contract claims arise from same contract); *Glazer v. Cambridge Indus., Inc.*, 422 A.2d 642 (Pa. Super. 1982) (inapplicable when same factual events but one action based in equity and other is for damages in assumpsit); *Kramer v. Kramer*, 394 A.2d 577 (Pa. Super. 1978) (inapplicable when suit in assumpsit for damages and suit in equity to rescind contract arises from same contract); *Raw*, supra, (inapplicable when suits arise from same subject matter but one is in equity and the other in assumpsit for damages).

Because the claims made in the present action are not the same or substantially the same as those made in the federal action, the court declines the application of *lis pendens*.

## C. *Same relief*

Finally, the court concludes that the relief sought in the present case and the federal action is not the same. First, the federal action seeks equitable relief whereas the present action seeks legal relief.[2] In *Raw*, supra, the Pennsylvania

---

2. Much of the analysis regarding whether the relief sought is the same is also applicable to whether the claims are the same. The court discusses it under the third prong of the identity test rather than the second merely because the court couches the analysis in terms of equitable versus legal relief. However, the court's analysis could just as

Supreme Court held that assumpsit claims could not be abated when there was a pending equity action, despite the factual background being identical. See also *Kramer*, supra, at 340. ("Generally, a pending equity action is deemed not to be the same as the corresponding legal action when the remedies being pursued are different, even if both actions arose out of the same factual situation.")

In *Koppenheffer*, the court explained the differences between equitable and legal relief:

Ejectment is the proper form of action to recover possession of land. Specific performance is an equitable remedy which compels the performance of a contract in the precise terms agreed on, or such a substantial performance as will do justice between the parties under the circumstances.

Ejectment is on the law side of the court, and the complaint in equity asking for specific performance is on the equity side of the court. 40 Pa. D. & C. 2d at 263 (internal citations omitted).

Although not binding, the court finds this explanation compelling. Legal and equitable relief has long been considered separate and distinct from one another. In the present action, bank seeks legal relief in the form of ejectment. On the other hand, in the federal action, FHR seeks equitable relief in the form of specific performance, declaratory judgment, and injunctive relief against bank. Because the two forms of relief are different - legal versus

easily be couched in terms of whether the causes of action are legal or equitable in nature.

equitable — the court finds *lis pendens* is inapplicable.

There is an alternative way to characterize the relief sought. It could likewise be considered either *in personam or in rem*. The different classification has no effect on the court's opinion, though.

> It is firmly settled that a prior suit in a state or federal court which does not deal, either actually or potentially, with specific property or objects, and in which nothing more than a personal judgment is sought, not only does not prevent another suit from being brought for the same cause in the court of the other jurisdiction, but does not even furnish ground for a plea in abatement to the second action. *Thompson v. Fitzgerald*, 329 Pa. 497, 505, 198 A. 58, 62 (1938) (citations omitted).

Here, the federal action is *in personam* whereas this court has *in rem* jurisdiction, as the property that is the subject of this suit, the *res*, is located within its boundaries. While the New York court may have jurisdiction over bank's person, it does not have *in rem* jurisdiction over the property located in Pennsylvania. See *Whitmer v. Whitmer*, 365 A.2d 1316 (Pa. Super. 1976). Furthermore, it is "one of the oldest maxims" that equity acts *in personam*, and that "decrees against persons directing them to take certain action in respect to property are generally regarded as decrees *in personam*." *Atlantic Seaboard Natural Gas Co. v. Whitten*, 173 A.305, 306 (Pa. 1942). As discussed above, the relief FHR seeks in the federal action is equitable in nature. Therefore, the federal court has *in personam* jurisdiction.

Unless an [*in personam*] action pending in another state or another country reaches judgment, so as to come within the protection of the full faith and credit clause of the federal constitution, such action will not prevent the institution of an action in this state on the same cause and between the same parties. *Singer v. Dong Sup Cha*, 550 A.2d 791, 792-93 (Pa. Super. 1988) (quoting P.L.E. Abatement and Revival § 5).

It is clear that a prior suit for personal judgment in federal court does not prevent another or require abatement for a second action brought in state court. See *Thompson*, supra; *Singer*, supra; *Wilson v. Island Creek Coal Co.*, 40 Pa. D. & C. 2d 591. Therefore, the court refuses to apply the doctrine of *lis pendens*.

Although the court is satisfied that FHR failed to show the doctrine of lis pendens applies to the case, sub judice, the court notes its arguments fail for one other reason. It is "the settled law of the country, that the plea of *lis pendens* in another state is no defence to this [the later Pennsylvania] action." *Singer*, supra, at 792 (quoting *Smith v. Lathrop*, 44 Pa. 326 (1863). See also 2 Standard Pa. Practice 2d § 12:17.

That said, courts still have the inherent power to stay a later proceeding until the first is resolved. *Singer*, supra, at 793; *Norristown*, supra, at 905. Although the identity test must be strictly complied with when a party is seeking dismissal of a later filed suit, strict compliance is not necessary when a party is seeking a stay. *Crutchfield*, supra. "The trial court need not...sanction the duplication of effort and waste of judicial resources that would result

from allowing both cases to proceed simultaneously, in a race to judgment." *Singer, supra,* at 793 (quoting *Klein v. City of Philadelphia,* 465 A.2d. 730, 731 (Pa. Commw. 1983).

While the court has the power to stay the proceeding, it declines to do so. Granting a stay in the proceeding would result in severe prejudice to bank. Its rights could be indefinitely tied up in the New York litigation, which involves Kerry, a party over whom it has no control.

## II. *Availability of a meritorious defense*

Having determined the court will not grant FHR's petition for either abatement or a stay, the court next considers whether FHR has stated a prima facie meritorious defense to bank's complaint in confession of judgment in ejectment.

## A. *Agreement of sale*

On August 31, 2009, bank and FHR entered into an agreement for the sale of real estate (hereinafter "sales agreement"). The sales agreement called for the sale of property, which is the subject of this suit, for a sum of $10 million. Sales agreement, p.7, section 3(a). One-quarter of the sale price, or $2.5 million, was to be payable to FCB at the time of closing. *Id.* at 8, Section 3(c). Closing was scheduled for no later than October 30, 2009. *Id.* at 9, Section 5(b). Closing could be modified by written agreement of the parties. *Id.* The sales agreement, likewise, could be modified by written agreement of all parties. *Id.* at 16, Section 18.

No closing occurred on October 30, 2009. There is no evidence indicating that the closing date was modified in writing. It is not contested that FHR never made the $2.5 million due under the sales agreement. Additionally, there is no indication that any other term of the sales agreement was modified in writing by all parties. Therefore, section 20 of the sales agreement discussing default by the buyer remains in full force:

> In the event that closing does not occur on or before the closing date due to buyer's default in the performance of the provisions thereof, seller may either (a) disregard such default and perform this Agreement by tendering title and the premises in return for the purchase price, or (b) terminate this agreement.... In the event seller elects option (b), there shall be no further liability or obligations on either of the parties hereto and this agreement shall become null and void.

As discussed above, closing did not occur on or before October 30, 2009, and no written agreement was reached between bank and FHR which would have modified this deadline. Because a contract for the sale of real property must be in writing to satisfy the Statute of Frauds, 33 P.S. § 1; 13 Pa. C.S. § 2201, even if the court accepts as true the allegation that there was an oral agreement between the parties, it is unenforceable.

Because the conditions set forth in the sales agreement did not occur and were not modified in writing, FHR was in default of its obligations. Pursuant to section 16 of the agreement, bank was free to terminate the agreement by written notice, which it did when it sent FHR a letter dated

May 6, 2010. The letter clearly states that it constituted formal written notice to FHR that bank was considering it in default and terminating the sales agreement. Bank followed the procedures set forth in the sales agreement to have it declared null and void.

Therefore, any suggestion that FHR possessed the property because of the sales agreement that is null and void is rejected. The court finds the decision in *Werdebach v. Abel*, 276 Pa. 368 (1923), most on point. In *Werdebach*, a lease was signed simultaneously with a contract of sale to purchase the leased property within six months. *Id.* at 369. The sale was never consummated and three years later, the lessor sought possession. *Id.* The court held that "[t]he fact that a lease was executed tends to strongly negative the idea that appellant was in possession under the agreement." Instead, the court found that appellant's failure to tender the purchase money was determinative. *Id.* at 369-70.

Similar to *Werdebach*, a lease was entered at or near the time of the sales agreement. The existence of the second amendment to lease, the final written lease in a long series of written leases and extensions, strongly suggests that FHR was not in possession of the property. See *Id.* Also, the sales agreement called for $2.5 million to be tendered at the time of closing, which was scheduled for October 30, 2009. Neither $2.5 million was tendered nor did closing occur on that date. The sale was never consummated. Because of the default, bank was free to exercise its termination rights under the contract, which is effectively did.

## B. *Lease*

In addition, the court finds that FHR has not shown it is not bound by the terms of the second amendment to lease, executed on August 31, 2009, between bank and FHR. In *City of Pittsburgh v. Charles Zubik & Sons, Inc.*, 404 Pa. 219, 223 (1961), the Pennsylvania Supreme Court reaffirmed what has been recognized as governing law:

> When the defendant held over the law gave a choice of remedies to the landlord. He might have looked upon the tenant as a trespasser and summarily ejected him, or he might have treated him in holding over a tenant by sufferance, or he might have regarded the holding over as a continuance under the terms of the lease.

Bank could, therefore, choose any of the above three options when FHR remained in possession after the second amendment to lease expired on October 30, 2009. It has opted to treat FHR as a holdover tenant, and as such, hold FHR liable under the terms of the lease. See *Reading Terminal Merchs. Ass'n v. Samuel Rappaport Assocs.*, 456 A.2d 552, 556 (Pa. Super. 1983) (holding the law implies a new lease on the same terms and subject to the same covenants and conditions as the original lease when a tenant holds over).

Also, the mere fact that bank elected to treat FHR as a holdover tenant does not preclude it from later exercising one of the other options. See *Mack v. Fennell*, 171 A.2d 844 (Pa. Super. 1961). In the case subjudice, bank elected at first to treat FHR as a holdover tenant under the same terms of the lease. Later, it elected to treat FHR as a

trespasser and sought ejectment. Bank was entitled to do so.

Moreover, the second amendment to lease, as well as the first amendment and original lease, contained a confession of judgment clause which explicitly stated that no notice was required prior to entry of judgment. See second amendment to lease, p. 5, section 12 ("Remedies"). In section 14, FHR also waived "any and all notices required by the landlord/tenant act or other laws of the Commonwealth of Pennsylvania, including but not limited to notice to vacate leased premises upon the expiration of the term thereof." *Id.* ("Waiver of Notice") Both provisions are appear conspicuously in bold font, and immediately before the signature lines, there is another bold-faced warning that judgment for possession by confession may be entered without notice. *Id.* at 7. These provisions remain in force regardless of the lease's status. See *Zubik*, supra, at 223 (rejecting argument that remedies under the lease cannot be resorted to by landlord after a lease has terminated). Because FHR is a holdover tenant and bound by the terms of the second amendment to lease, it is also bound to those provisions and no notice was required before confession of judgment.

Finally, the court notes that any payment made by or on behalf of FHR occurred after the May 6, 2010, letter. Because bank already set the eviction process in motion at that point and because there were no provisions allowing FHR to cure the default, such payment does not estop

bank from moving forward with this action.[3]

Based on the foregoing, the court enters the following:

## ORDER

And now, September 3, 2010, following a hearing on defendant's petition and upon consideration of briefs, it is the order of this court as follows:

1. As defendant failed to show that the elements of *lis pendens* have been satisfied, the court denies defendant's petition to abate the present proceeding due to pendency of a prior federal action;

2. The court denies defendant's petition seeking a stay of the present proceeding pending resolution of the federal suit;

3. Having failed to state any prima facie meritorious defenses to plaintiff's complaint, the court denies defendant's petition to open and/or strike judgment obtained by confession of judgment; and

4. The court lifts or dissolves any and all stays in connection with the confessed judgment in ejectment, permitting plaintiff to proceed immediately with execution on said judgment.

---

3. The court realizes there is some dispute as to whether the payment made was for rent or as payment on a loan held by bank. Because FHR could not cure its arrearages with payment after bank elected to proceed with eviction proceedings, this court need not determine what the payment was in fact for. Considering FHR's allegations as true, that the loan was for rental arrearages, FHR still could not cure the default.